ALEX G. TSE (CABN 152348)
Attorney for the United States
Acting under Authority Conferred by 28 U.S.C. § 515

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

ADAM R. REEVES (NYBN 2363877)
ROBERT S. LEACH (CABN 196191)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone:  (415) 436-7157
    Fax:  (415) 436-7234
    Adam.Reeves@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 16-00462 CRB |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR AN ORDER DIRECTING THE GOVERNMENT TO REVIEW HEWLETT-PACKARD'S FILES |
| v. | |
| SUSHOVAN HUSSAIN, | Date: May 10, 2017 |
| Defendant. | Time: 1:30 p.m. |
| | Court: Hon. Charles R. Breyer |

**INTRODUCTION**

The United States hereby responds to the defendant's Motion for an Order Directing the Government to Review the Files of Hewlett-Packard and Morgan, Lewis & Bockius LLP dated April 26, 2017 (Document 45).  The motion should be denied because it is (1) unprecedented and potentially hazardous to the effective prosecution of this case and (2) unwarranted when the defendant may obtain the same relief by seeking authority to issue subpoenas to Hewlett-Packard pursuant to Fed. R. Crim. P. 17.

## FACTUAL BACKGROUND

**1.    October 2011: The Defendant Worked at HP**

On October 3, 2011, Hewlett-Packard Company ("HP") formally bought the securities of Autonomy Corporation plc ("Autonomy") and formally acquired control of Autonomy and its employees, including the defendant, Sushovan Hussain. Indictment at ¶ 11 (Document 1). From October 2011 to May 2012, the defendant was an HP employee. May 3, 2017 Declaration of AUSA Adam A. Reeves ("Reeves Declaration") at ¶ 5. In or about May 2012, the defendant's employment at HP ended. Reeves Declaration at ¶ 5.

**2.    May 2012: Morgan Lewis's Internal Investigation**

At or about the same time, in or about May 2012, HP retained the law firm of Morgan, Lewis & Bockius, LLP ("Morgan Lewis") to provide advice and counsel in connection with the defendant's (and others') departure from HP and ultimately to conduct an internal investigation of Autonomy's accounting practices. Reeves Declaration at Ex. D. By November 16, 2012, Morgan Lewis had begun to interview relevant persons as part of it internal investigation. Reeves Declaration at ¶ 7. The government today is aware of at least nine such interviews. *Id.*

On or about November 16, 2012, the United States Securities and Exchange ("SEC") met with counsel from Morgan Lewis about the acquisition of Autonomy. Reeves Declaration at ¶ 8. Eventually, among other issues, the SEC's investigation including a consideration of HP's public disclosures about Autonomy. *Id.*

On or about November 20, 2012, HP announced an $8.8 billion write-down relating to its acquisition of Autonomy. Reeves Declaration at Ex. E.

**3.    November 2012: The Government's Criminal Investigation**

On or about November 21, 2012, the United States Attorney's Office ("USAO") opened an investigation into the facts and circumstances of HP's acquisition of Autonomy. Reeves Declaration at ¶ 10. On or about January 16, 2013, prosecutors from the USAO met, for the first time, with lawyers from Morgan Lewis, approximately nine (9) months after their engagement began. Reeves Declaration at ¶ 11. Prior to this initial meeting with the USAO, Morgan Lewis interviewed at least fifteen

additional witnesses. On January 16, 2013, the government agreed that it would not construe HP's production of information for which a possible attorney-client privilege or work product protection could be asserted as a subject matter waiver. Reeves Declaration at Ex. G.[1]

HP thought that Sushovan Hussain, and others from Autonomy, had defrauded HP. As a result, HP appears to have been motivated to cooperate with the government's investigation in the ways crime victims are often motivated to cooperate with a criminal investigation.

From late 2012 through the present, HP, and its counsel, Morgan Lewis, have cooperated with the government's investigation in a manner that is comparable to the cooperation of other corporations with government investigations into possible corporate fraud. Reeves Declaration at ¶ 13. That cooperation included the production of documents in response to multiple government requests; detailed disclosures about statements made by HP (and thus Autonomy) personnel to lawyers at Morgan Lewis; and presentations about the facts in business records and emails on discrete issues relevant to the government's investigation. Reeves Declaration at ¶ 14. At no time did HP or Morgan Lewis "act[] on the government's behalf" (quoting from Document 45 at 7). Reeves Declaration at ¶ 15.

Separately, the government conducted approximately 198 witness interviews in the course of its investigation; 63 of those witness interviews were of former Autonomy personnel; 24 of those witness interviews were of HP personnel; and 111 of those interviews were of persons unrelated to either HP or Autonomy. Reeves Declaration at ¶ 16. In addition to documents gathered from HP (and thus Autonomy), the government gathered approximately 4.4 million pages documents from other sources. Reeves Declaration at ¶ 16. The government has disclosed this information to the defendant. Reeves Declaration at ¶ 16.

**4.    September 2015: The HP-Deloitte Discussions**

On or about September 14, 2015, Hewlett-Packard Vision B.V. ("HP") sent Deloitte LLP a so-called Letter of Claim. *See* HP-SEC-01429650-9767. In the Letter of Claim, HP accused Deloitte of negligence and "apparent complicity in the false accounting and deliberate non-disclosure perpetrated by

---

[1] The agreement is not meaningfully different from agreements in other matters involving internal investigations. *See United States v. Reyes*, 239 F.R.D. 591 (N.D. Cal. 2008) (Breyer, J.).

1 Autonomy's senior management." HP-SEC-01429653.  Based on these and other allegations, HP, in the Letter of Claim, stated that it had incurred losses of approximately $4.55 billion.  HP-SEC-01429765.

On or about November 4, 2015, government counsel met with counsel for HP to discuss the extent to which the size of HP's claim against Deloitte was having a chilling effect on the willingness of relevant Deloitte witnesses to cooperate with the government's investigation by coming from the United Kingdom to the United States.   Reeves Declaration at ¶ 18.  On or about March 17, 2016, government counsel met with counsel for HP and Deloitte to discuss whether HP and Deloitte were willing to explore a possible resolution that would enable Deloitte to cooperate and reduce the concerns Deloitte witnesses had about coming to the United States. Reeves Declaration at ¶ 19.  On April 28, 2016, as a result of the process described above, counsel for Deloitte executed a letter stating that "Deloitte … agree[d] to cooperate in good faith with the [United States Attorney's] Office" by, among other things, "appearing in person at any trial."

The government has disclosed information about the HP-Deloitte discussions to the defendant. Reeves Declaration at ¶ 20.

**5.     March 2017: Letter from Defendant's Counsel**

On or about March 3, 2017, the defendant's counsel warned the government that it would be "improper … for the government to receive or review" certain documents in the possession of HP. Reeves Declaration at Ex. F.  According to defense counsel, documents the government was prohibited from reviewing included "Mr. Hussain's own emails and other documents, as well as a transcript of his interview with the UK's Financial Reporting Council ("FRC")."  *Id*.

**ARGUMENT**

**I.    THE DEFENDANT'S MOTION SEEKS RELIEF THAT IS UNPRECEDENTED AND POTENTIALLY HAZARDOUS**

By his motion, the defendant contends that the level of cooperation provided by HP and Morgan Lewis during the government's investigation renders it "an unofficial member of the government's prosecution team."  Document 45 at 3.  According to the defendant, this justifies an order directing the government "to review the files of the Hewlett-Packard Company (and any related entities) and its

1  lawyers at Morgan, Lewis & Bockius LLP for *Brady/Giglio* materials in this case."  Document 45-1

2  ([Proposed] Order).

3        HP and Morgan Lewis were private actors cooperating with a government investigation.  Reeves

4  Declaration at ¶ 15.  They did not act on the government's behalf.  Reeves Declaration at ¶ 15.  As such,

5  HP and Morgan Lewis were never members of the prosecution team, unofficially or otherwise.  For this

6  reason, the Court should deny the defendant's motion.

7        Courts have routinely rejected the relief the defendants now seek.  *See, e.g. United States v.*

8  *Nosal*, 2013 WL 1352244 (N.D. Cal. April 3, 2013) (Judge Edward M. Chen rejected the defendant's

9  claim that "Korn/Ferry was effectively a member of the prosecution team" and concluded that there was

10 "no basis for straying from the general consensus that private actors may not 'act[] on the government's

11 behalf' for the purposes of determining the government's *Brady* disclosure obligations.");  *United States*

12 *v. Gray*, 648 F.3d 562, 566 (7th Cir. 2011)(in a Medicaid fraud prosecution, the court rejected the

13 defendant's claim that the government violated *Brady* by failing to disclose certain timestamp data

14 belonging to company, EDS, hired by the State of Indiana to process Medicaid billing; the court found

15 that "EDS was not part of the prosecutorial team.");  *United States v. Josleyn*, 206 F.3d 144, 152-54 (1st

16 Cir. 2000)(notwithstanding extensive cooperation between private party (corporation) and government,

17 allegedly favorable information not disclosed to government by corporation was not attributed to

18 government);  *United States v. Buske*, 2011 WL 2912707 (E.D. Wis. 2011)(denying defendant's *Brady*

19 motion seeking private company's information material on theory that government and company

20 coordinated efforts as to the investigation of fraud against company, including some joint interviews of

21 witnesses, put company's information "in possession of the government;" "As a general matter, the

22 government is only required to produce in discovery materials in its 'possession, custody, or control.'

23 Fed. R. Crim. P. 16(a)(1)(E).  Likewise, courts have noted that *Brady* generally does not oblige the

24 government to obtain evidence from third parties.").  *Compare United States v. Stein*, 541 F.3d 130, 147

25 (2d Cir. 2008) (where government encouraged KPMG to withhold legal fees for indicted KPMG

26 partners, the actions of a private entity were attributable to the government for Sixth Amendment

27 purposes).  We ask the Court to come to the same conclusion for the same reasons.

28

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR AN ORDER DIRECTING THE GOVERNMENT
TO REVIEW HEWLETT-PACKARD'S FILES
CASE NO. CR 16-00462 CRB        5

Furthermore, it would be potentially hazardous in this case for the Court to do otherwise. On the one hand, counsel for the defendant has taken the position that the government is prohibited from reviewing potentially relevant documents in the possession of HP and its attorneys. Reeves Declaration at Ex. F. On the other hand, by this motion, the defendant would impose on the government an obligation to review those very same documents he warned were prohibited. Document 45-1 ([Proposed] Order). This is gamesmanship.

Worse, if the Court were to grant this motion, the defendant will succeed in imposing on the government the very burden his counsel warned the government to avoid. Reeves Declaration at Ex. F at 2 ("if your office *accesses* this material [Mr. Hussain's own emails and transcripts of his interview with the FRC] … the burden will fall to you to prove that you neither relied on nor made any use of the compelled evidence, or any leads resulting from such evidence" citing *Kastigar v. United States* (original emphasis)). Forcing such an outcome would be unduly prejudicial and potentially hazardous to the government's ability to prosecute the case.

## II.   RULE 17 SUBPOENAS PROVIDE AN APPROPIRATE ALTERNATIVE

There is an obvious and appropriate alternative. Pursuant to Rule 17, the defendant may seek the authority of the Court to issue subpoenas for relevant and admissible evidence. Having worked at HP for nearly six (6) months, the defendant is in a better position than others to identify admissible documents that may be relevant to his defense.

## CONCLUSION

For the reasons set forth herein, the government respectfully requests that the Court please deny the defendant's Motion for an Order Directing the Government to Review Hewlett-Packard's files.

Dated:  May 3, 2017

ALEX G. TSE
Attorney for the United States
Acting under Authority Conferred
by 28 U.S.C. § 515

/s/
_____
ADAM A. REEVES
ROBERT S. LEACH
Assistant United States Attorneys

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR AN ORDER DIRECTING THE GOVERNMENT TO REVIEW HEWLETT-PACKARD'S FILES
CASE NO. CR 16-00462 CRB                                6