1   MORGAN, LEWIS & BOCKIUS LLP
    SUSAN D. RESLEY, Bar No. 161808
2   susan.resley@morganlewis.com
    LAUREN N. WENNER, Bar No. 298942
3   lauren.wenner@morganlewis.com
    KURT B. OLDENBURG, Bar No. 287275
4   kurt.oldenburg@morganlewis.com
    ELLIE F. CHAPMAN, Bar No. 305473
5   ellie.chapman@morganlewis.com
    One Market, Spear Street Tower
6   San Francisco, CA  94105
    Tel:    +1.415.442.1000
7   Fax:    +1.415.442.1001

8   MARTHA B. STOLLEY, *Admitted Pro Hac Vice*
    martha.stolley@morganlewis.com
9   CAROLYN A. SILANE, Bar No. 298113
    carolyn.silane@morganlewis.com
10  101 Park Avenue
    New York, NY 10178
11  Tel:    +1.212.309.6858
    Fax:    +1.212.309.6001

12
    GIBSON, DUNN & CRUTCHER LLP
13  MICHAEL LI-MING WONG, Bar No. 194130
    mwong@gibsondunn.com
14  555 Mission Street, Suite 3000
    San Francisco, CA 94105
15  Tel:    +1.650.849.5393
    Fax:    +1.650.849.5093
16
    Attorneys for Hewlett-Packard Enterprise &
17  Hewlett-Packard Company

18              UNITED STATES DISTRICT COURT

19            NORTHERN DISTRICT OF CALIFORNIA

20               SAN FRANCISCO DIVISION

21  UNITED STATES OF AMERICA,          Case No. 3:16-cr-00462 CRB

22                  Plaintiff,          REPLY IN SUPPORT OF NON-PARTY
                                        HEWLETT-PACKARD COMPANY'S
23          vs.                         AMENDED MOTION TO QUASH SUBPOENA
                                        ISSUED PURSUANT TO RULE 17(C)
24  SUSHOVAN HUSSAIN,
                                        Date:       September 26, 2017
25                  Defendant.          Time:       1:30 p.m.
                                        Place:      Courtroom 6, 17th Floor
26                                      Judge:      Hon. Charles R. Breyer
                                        Date Filed: November 10, 2016
27                                      Trial Date: February 26, 2018

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN SUPPORT OF NON-PARTY HEWLETT-PACKARD
COMPANY'S AMENDED MOT. TO QUASH SUBPOENA;
Case No. 3:16-cr-00462 (CRB)

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENT (STANDING ORDER NO. 5) ........................................ 1

II.   ARGUMENT .................................................................................................................. 1

    A.   The Vast Majority of Mr. Hussain's Requests Have Already Been Fulfilled
        And, In Addition, Do Not Meet The *Nixon* Elements ............................................ 2

    B.   Mr. Hussain Inappropriately Holds HP To The Same Standards As The
        Government ............................................................................................................. 2

    C.   Mr. Hussain Does Not Meet His Burden Under *United States v. Nixon* ............... 4

        1.   Virtually All Of The Remaining Requests Fail The Specificity
             Requirement ............................................................................................... 5

        2.   Many Of The Remaining Requests Seek Inadmissible Hearsay ................. 6

        3.   Mr. Hussain's Unsupported And Speculative Contentions Are Not
             Relevant ..................................................................................................... 8

             i.    Request No. 45: All PricewaterhouseCoopers ("PwC")
                 Material .......................................................................................... 9

             ii.   Request Nos. 15, 17, 18, 19: Materials Regarding The
                 Structure And Tax Treatment Of HP's Acquisition Of
                 Autonomy ....................................................................................... 11

             iii.  Request Nos. 26, 30, 39, 40, 47: Documents Pertaining To
                 HP's Post-Acquisition Conduct ..................................................... 12

        4.   The Court Should Quash The Subpoena On Other Grounds ................... 13

             i.    Request No. 42: Summaries, Notes, And Memoranda Of
                 Interviews By HP In-House Counsel Are Disallowed Under
                 Rule 17(h) And Are Privileged ..................................................... 13

             ii.   Request Nos. 48 and 49:  Deloitte Materials Are Protected
                 By Rule 408 And The Common-Interest Privilege, And Are
                 Cumulative ..................................................................................... 15

III.  CONCLUSION ............................................................................................................. 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

REPLY IN SUPPORT OF NON-PARTY HEWLETT-PACKARD
COMPANY'S AMENDED MOT. TO QUASH SUBPOENA
Case No. 3:16-cr-00462 (CRB)

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bemis v. Edwards*,
  45 F.3d 1369 (9th Cir. 1995).....................................................................................6, 7

*Bowman Dairy Co. v. United States*,
  341 U.S. 214 (1951) ........................................................................................................4

*Boyd v. City of Oakland*,
  458 F. Supp. 2d 1015 (N.D. Cal. 2006) .........................................................................7

*Brady v. Maryland*,
  373 U.S. 83 (1963) ..........................................................................................1, 3, 4, 14

*In re Grand Jury Subpoena*,
  357 F.3d 900 (2d Cir. 2004) ..........................................................................................14

*In re Homestore.com, Inc.*,
  No. CV 01-11115 RSWL, 2011 WL 291176 (C.D. Cal. Jan. 25, 2011) .............8, 11

*In re Lithium Ion Batteries Antitrust Litig.*,
  No. 13-MD-02420 YGR, 2015 WL 1223972 (N.D. Cal. Mar. 17, 2015) .........14, 15

*In re McKesson HBOC, Inc. Secs. Litig.*,
  No. No. C-99-20743 RMW, 2005 U.S. Dist. LEXIS 7098
  (N.D. Cal. Mar. 31, 2005) ............................................................................................11

*Narog v. City of Redwood City*,
  No. C-13-03237 DMR, 2014 WL 1088297 (N.D. Cal. Mar. 17, 2014)....................16

*SEC v. Berry*,
  No. C07-04431 RMW HRL, 2011 WL 825742 (N.D. Cal. Mar. 7, 2011) ..............11

*Torres v. City of Santa Clara*,
  No. 5:13-cv-01475-PSG, 2014 U.S. Dist. LEXIS 116195
  (N.D. Cal. Aug. 20, 2014)...............................................................................................6

*United States v. Booth*,
  No. 2:08-cr-00283-RCJ-RJJ, 2011 U.S. Dist. LEXIS 142205
  (D. Nev. Dec. 8, 2011) .....................................................................................5, 10, 16

*United States v. Cervantes*,
  No. 12-cr-00792-YGR-12 (KAW), 2016 U.S. Dist. LEXIS 75486
  (N.D. Cal. June 9, 2016) ...............................................................................................13

*United States v. Chevron Texaco Corp.*,
   241 F. Supp. 2d 1065 .................................................................................15

*United States v. Collins*,
   No. 11-CR-00471-DLJ (PSG), 2013 U.S. Dist. LEXIS 36361
   (N.D. Cal. Mar. 15, 2013) ..........................................................................7

*United States v. Cuthbertson*,
   651 F.2d 189 (3d Cir. 1981).........................................................................4

*United States v. Eden*,
   659 F.2d 1376 (9th Cir. 1981).....................................................................10

*United States v. Fields*,
   663 F.2d 880 (9th Cir. 1981).......................................................................13

*United States v. Johnson*,
   No. CR 94-0048 SBA, 2007 U.S. Dist. LEXIS 95834
   (N.D. Cal. Dec. 24, 2007) ......................................................................3, 10

*United States v. Mason*,
   No. CR 05-324-RE, 2008 U.S. Dist. LEXIS 34537 (D. Or. Apr. 25, 2008)............................16

*United States v. Nguyen*,
   No. 13-cr-00295-RMW-1 (HRL), 2016 U.S. Dist. LEXIS 63673
   (N.D. Cal. May 13, 2006) ...........................................................................9

*United States v. Nixon*,
   418 U.S. 683 (1974) ......................................................................... *passim*

*United States v. Nosal*,
   No. CR-08-0237 EMC, 2013 WL 1402336 (N.D. Cal. Apr. 5, 2013)......................................14

*United States v. Pac. Gas & Elec. Co.*,
   No. 14-cr-00175-THE, 2016 U.S. Dist. LEXIS 78798
   (N.D. Cal. June 16, 2016) ..........................................................................16

*United States v. Pac. Gas & Elec. Co.*,
   No. 14-cr-00175-THE, 2016 U.S. Dist. LEXIS 40587
   (N.D. Cal. Mar. 28, 2016) ...................................................................1, 2, 3, 8

*United States v. Reyes*,
   239 F.R.D. 591 (N.D. Cal. 2006) ............................................................ *passim*

*United States v. Rico*,
   619 Fed. Appx. 595 (9th Cir. 2015) .............................................................8, 11

*United States v. Rodriguez*,
   No. 2:11-0296 WBS, 2016 WL 6440323 (E.D. Cal. Oct. 28, 2016) ....................................3

*United States v. Roque*,
No. CR 13-829 PA, 2014 U.S. Dist. LEXIS 197123 (C.D. Cal. Aug. 18, 2014) ......................8

*United States v. Sanchez*,
No. CR S-05-0443 WBS, 2007 U.S. Dist. LEXIS 103945
(E.D. Cal. Jan. 9, 2007)...........................................................................................................6, 7

*United States v. Stein*,
488 F. Supp. 2d 350 (S.D.N.Y. 2007).........................................................................................3

*United States v. Stukenbrock*,
No. 5:15-cr-00034-EJD-1 (HRL), 2016 U.S. Dist. LEXIS 171563
(N.D. Cal. Dec. 9, 2016) ............................................................................................................5

*United States v. Tomison*,
969 F. Supp. 587 (E.D. Cal. 1997).............................................................................................3

*United States v. Zavala-Tapia*,
No. CR-2:09-297 WBS, 2010 U.S. Dist. LEXIS 137645
(E.D. Cal. Dec. 17, 2010)...........................................................................................................5

*Upjohn Co. v. United States*,
449 U.S. 383 (1981) .................................................................................................................14


**Other Authorities**

Federal Rule of Evidence 408 .............................................................................................1, 15, 16

Federal Rule of Evidence 801 ......................................................................................................6

Federal Rule of Evidence 803 ..................................................................................................6, 8

Federal Rule of Criminal Procedure 16 ...................................................................................3, 10

Federal Rule of Criminal Procedure 17 ................................................................................ *passim*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.   SUMMARY OF ARGUMENT (STANDING ORDER NO. 5)

3  In his Opposition, defendant Sushovan Hussain attempts to craft new legal standards and to

4 otherwise distract from the issues at hand (including by blaming his victim and raising arguments

5 about documents that Hewlett-Packard Company and Hewlett-Packard Enterprise (collectively,

6 "HP") have already produced).  This is because he knows he cannot meet his burden of

7 establishing the required elements for each of his subpoena requests under Rule 17, *United States*

8 *v. Nixon*, 418 U.S. 683 (1974), and well-established precedent in this District.

9  A Rule 17 subpoena is "not intended to provide a means of discovery for criminal cases."

10 *Nixon*, 418 U.S. at 698.  Rather, "a Rule 17(c) subpoena reaches only *evidentiary* materials – not

11 all *discoverable* materials."  *United States v. Pac. Gas & Elec. Co.*, No. 14-cr-00175-THE, 2016

12 U.S. Dist. LEXIS 40587, at \*7-8 (N.D. Cal. Mar. 28, 2016) (emphasis in original).  Nevertheless,

13 Mr. Hussain disregards the *Nixon* requirements and, without any basis in law or fact, accuses HP –

14 a third-party subpoena recipient and the victim of his fraud – of colluding with the government and

15 thereby being imputed with criminal discovery obligations under *Brady v. Maryland*, 373 U.S. 83

16 (1963), that go well beyond Rule 17.

17  Mr. Hussain already has substantially all of the documents responsive to 54 of the 73

18 requests and sub-requests (the "54 Requests") in the expansive subpoena he served on HP on

19 July 19, 2017 (the "Subpoena").  In addition, in an effort to narrow the issues for this Court to

20 resolve, HP has agreed to provide documents responsive to Request No. 23, which have not been

21 previously produced.  The Court should quash the other 18 requests (the "Remaining Requests")

22 as "unreasonable and oppressive" within the meaning of Rule 17, as the Remaining Requests

23 impermissibly seek information that is: (1) ***irrelevant*** to the crimes charged in the indictment

24 (*Nixon*, 418 U.S. at 700); (2) ***inadmissible*** because it is hearsay and/or a settlement

25 communication within the meaning of Federal Rule of Evidence 408 (*id*. at 701); (3) ***insufficiently***

26 ***specific*** (*id*.); or (4) ***privileged*** as an attorney-client communication and/or attorney work-product.

27 *United States v. Reyes*, 239 F.R.D. 591, 598 (N.D. Cal. 2006).

28

### II.   ARGUMENT

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**A.    The Vast Majority of Mr. Hussain's Requests Have Already Been Fulfilled And, In Addition, Do Not Meet The *Nixon* Elements**

Mr. Hussain asserts that HP "has wavered" in its good faith belief of having produced substantially all documents responsive to the 54 Requests.  Mr. Hussain is wrong.  HP has unwaveringly made such representations verbally and in writing on multiple occasions.  Declaration of Susan D. Resley ("Resley Decl."), Exh. 1, 3.  Equally disingenuous is Mr. Hussain's assertion that "HP does not argue that these [54] requests are vague or seek irrelevant or inadmissible evidence."  (Opp'n at 6.)  As Mr. Hussain is well aware, in HP's original Motion To Quash[1] – drafted prior to Mr. Hussain's agreement to vacate requests for documents he already had – HP expressly stated that the 54 Requests were not only unreasonable, but also failed to meet the *Nixon* requirements of relevance, admissibility, and specificity.[2]  Inasmuch as HP believed that the parties had resolved their dispute regarding these requests and wished to limit the material before the Court to only unresolved issues, HP did not detail its objections as to the 54 Requests in its Amended Motion to Quash.  Moreover, Mr. Hussain concedes that it would be oppressive to expect HP to re-produce materials to him that he already has.  (Opp'n at 6.)  As such, HP now considers these 54 Requests to have been satisfied.[3]  Given HP's agreement to produce documents responsive to Request No. 23, the only Requests still in dispute are Nos. 15, 17–19, 26, 30, 39, 40, 42, 45, 47–49, and 53.

**B.    Mr. Hussain Inappropriately Holds HP To The Same Standards As The Government**

---

[1] In its original Motion to Quash, HP described the 52 Requests for which it had already produced responsive documents.  Subsequently, after meet and confer discussions, Mr. Hussain's counsel agreed to narrow the scope of Request No. 46.  As narrowed, HP was able to represent that it had produced documents responsive to this Request as well.  Additionally, HP recently determined through a significant review that it had already produced documents responsive to Request No. 11.

[2] Mr. Hussain's claim that, because HP has produced millions of documents to the government, his requests for the same material are *ipso facto* appropriate pursuant to a Rule 17(c) subpoena is similarly unpersuasive.  (Opp'n at 6.)  Unlike the grand jury subpoenas and other requests from the government in this case, a Rule 17(c) subpoena is "not intended to provide a means of discovery for criminal cases" (*Nixon*, 418 U.S. at 698) and reaches only *evidentiary* materials – not all *discoverable* materials."  *Pac. Gas & Elec. Co*., 2016 U.S. Dist. LEXIS 40587, at *7-8.

[3] The 54 Requests are Nos. 1-14, 16, 20-22, 24-25, 27-29, 31-38, 41, 43, 44, 46, and 50-52 (including sub-requests).

Perhaps recognizing that he is unable to meet the Rule 17 requirements as set forth in *Nixon* and other cases, Mr. Hussain conflates the government's criminal discovery obligations with a third party's obligations pursuant to a Rule 17 subpoena.  To this end, Mr. Hussain makes sweeping and completely unsupported accusations of collusion between HP and the government. Mr. Hussain then suggests – without any support in the case law – that his inability to obtain certain information from the government through the proper channels of criminal discovery somehow entitles him to demand the same material from HP.  (Opp'n at 8-9.)  The case law, however, makes clear that Rule 17 does not permit a defendant to circumvent the limitations of criminal discovery provided by the government pursuant to Rule 16.  *United States v. Johnson*, No. CR 94-0048 SBA, 2007 U.S. Dist. LEXIS 95834, at *5 (N.D. Cal. Dec. 24, 2007) (*citing Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)); *see also United States v. Rodriguez*, No. 2:11-0296 WBS, 2016 WL 6440323, at *1 (E.D. Cal. Oct. 28, 2016) ("The discovery tools available to defendants in criminal cases are limited, and are to be found elsewhere in the Federal Rules of Criminal Procedure, not in Rule 17.").[4]  While the Constitution and rules of criminal procedure dictate the ***government's*** discovery obligations, they do not license a criminal defendant demanding sweeping categories of documents from a third party "based on solely a mere hope that some relevant material might turn up."  *Pac. Gas & Elec. Co.*, 2016 U.S. Dist. LEXIS 40587, at *35 (internal quotations omitted).

Mr. Hussain speculates that HP possesses exculpatory information, which the government does not have, and that, because HP purportedly "acted as a member of the prosecution team," it is somehow imputed with responsibility under *Brady* to provide Mr. Hussain with any information he wishes.  (Opp'n at 8-9.)  Mr. Hussain's assertions are meritless.  Setting aside the factual inaccuracy of Mr. Hussain's position, there is no legal authority (and Mr. Hussain cites to none)

---

[4] Mr. Hussain's reliance on *United States v. Stein*, 488 F. Supp. 2d 350, 353 (S.D.N.Y. 2007), and *United States v. Tomison*, 969 F. Supp. 587, 594 (E.D. Cal. 1997), for the proposition that Rule 17(c) permits a wider scope of requests from a third party than from the government is misplaced and contrary to Ninth Circuit and Northern District of California precedent.  *See Reyes*, 239 F.R.D. at 597 ("The Ninth Circuit has flatly rejected [proponent's] expansive construction of Rule 17(c) . . . that Rule 17(c) applies differently to third parties than it does to the government."), *citing United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) ("[W]e see no basis for using a lesser evidentiary standard merely because production is sought from a third party rather than from the United States.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

REPLY IN SUPPORT OF NON-PARTY HEWLETT-PACKARD
COMPANY'S AMENDED MOT. TO QUASH SUBPOENA
Case No. 3:16-cr-00462 (CRB)

1   entitling a criminal defendant to seek *Brady* information from a non-governmental party through a

2   Rule 17 subpoena.  While Mr. Hussain cites to *United States v. Cuthbertson*, 651 F.2d 189, 195

3   (3d Cir. 1981), that case does not do the service claimed for it.  The *Cuthbertson* court ruled that a

4   criminal defendant must meet the usual Rule 17 standards in order to obtain exculpatory evidence

5   from a third party.  "[N]aked exculpatory material held by third parties that does not rise to the

6   dignity of admissible evidence simply is not within [Rule 17]. That is the teaching of *Bowman*

7   *Dairy* and *Nixon*…."  *Id.*  The Third Circuit went on to distinguish explicitly between "potential

8   exculpatory material in the possession of the prosecution, generally available under the teachings

9   of *Brady v. Maryland*, and exculpatory evidence in the possession of third parties."  *Id.*

10          The Supreme Court grounded its *Brady* decision in the Due Process Clause, which is

11   inapplicable to non-governmental actors, and focuses on the suppression of evidence offered by

12   "the prosecution," not a private third party.  373 U.S. at 87.  Likewise, *Kyles v. Whitley* ruled that

13   an "*individual prosecutor* has a duty to learn of [and disclose] any favorable evidence known to

14   the others *acting on the government's behalf.*"  514 U.S. 419, 437 (1995) (emphasis added).

15   While Mr. Hussain relies heavily on *Kyles,* that case made no reference to any obligations on the

16   part of a non-governmental third party.  Rather, the *Kyles* Court specifically limited its holding to

17   information in the possession of law enforcement officials who reported to prosecutors – *i.e.*, who

18   were "acting on the government's behalf."  Here, HP was the victim of Mr. Hussain's fraud and, in

19   that capacity, cooperated with the government by producing information and documents.  In

20   pointing to HP's cooperation as evidence of "having signed up to work as a team" with the

21   government, Mr. Hussain could not be more wrong.  Mr. Hussain also misses the mark in claiming

22   that HP's cooperation with the government somehow imputed to HP the government's mission or

23   responsibilities.  (Opp'n at 9.)

24          Simply put, HP is not the government, and Mr. Hussain is not excused from his burden of

25   having his Subpoena comply with the strict requirements of Rule 17 and *United States v. Nixon*.

26

27          **C.    Mr. Hussain Does Not Meet His Burden Under *United States v. Nixon***

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Under *United States v. Nixon*, each Rule 17 subpoena request must seek information that is

2    specific, admissible, and relevant.  418 U.S. 683 (1974).  Mr. Hussain concedes that a Rule 17

3    proponent must demonstrate that he is making a "good-faith effort to obtain evidentiary material

4    and is not engaged in the proverbial 'fishing expedition,'" and that his requests are for "a discrete

5    set of existing written materials, within the possession of the subpoenaed parties, that pertain to

6    events and conversations that actually occurred and relate to specific subject matter."  (Opp'n at

7    5); *Reyes* at 599 (citing *Nixon*, 418 U.S. at 700).  Each of the Remaining Requests falls well short

8    of satisfying those strict standards, and the Court should quash them.

9              **1.  Virtually All Of The Remaining Requests Fail The Specificity Requirement**

10    All but one (Request No. 47) of the Remaining Requests fail to meet Rule 17's specificity

11    requirement.  While HP does not suggest that Mr. Hussain must specifically identify every single

12    document, his sweeping requests for large categories of materials – often seeking "any" or "all"

13    documents in a broad category (or the effective equivalent by failing to provide date parameters or

14    data custodians) – is exactly the type of fishing expedition that Rule 17 precedent prohibits.  *See,*

15    *e.g.*, *Reyes*, 239 F.R.D. at 606 ("A demand for any and all documents relating to several categories

16    of subject matter rather than specific evidentiary items, suggests the subpoena's proponent seeks to

17    obtain information helpful to the defense by examining large quantities of documents, rather than

18    to use Rule 17 for its intended purpose – to secure the production for a court proceeding of specific

19    admissible evidence.") (internal quotations omitted); *United States v. Booth*, No. 2:08-cr-00283-

20    RCJ-RJJ, 2011 U.S. Dist. LEXIS 142205, at *4 (D. Nev. Dec. 8, 2011) ("The best clue as to the

21    intent to 'fish' is the repeated use of the words 'any,' 'all,' and 'any and all.'"); *United States v.*

22    *Zavala-Tapia*, No. CR-2:09-297 WBS, 2010 U.S. Dist. LEXIS 137645, at *3 (E.D. Cal. Dec. 17,

23    2010) ("A subpoena signals a fishing expedition when it calls for '[a]ny materials' regarding a

24    particular subject and 'any other information' . . . .").  While the Court may have given Mr.

25    Hussain some "latitude" as to specificity (Opp'n at 4), surely this did not give the defense carte

26    blanche for limitless digging in the "mere hope that the documents sought will produce favorable

27    evidence."  *United States v. Stukenbrock*, No. 5:15-cr-00034-EJD-1 (HRL), 2016 U.S. Dist.

28    LEXIS 171563, at *5 (N.D. Cal. Dec. 9, 2016) ("[T]he specificity requirement [of Rule 17] is not

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

REPLY IN SUPPORT OF NON-PARTY HEWLETT-PACKARD
COMPANY'S AMENDED MOT. TO QUASH SUBPOENA
Case No. 3:16-cr-00462 (CRB)

1    satisfied if the defendants do not know what the evidence consists of or what it will show.")

2    (internal citations omitted).

3    **2.   Many Of The Remaining Requests Seek Inadmissible Hearsay**

4    As he concedes in his Opposition (Opp'n at 5), Mr. Hussain bears the burden to establish

5    that the materials "contain evidence admissible with respect to the offenses charged." *Nixon*, 418

6    U.S. at 700.  Requests for inadmissible hearsay do not meet this standard. *See, e.g.*, *Reyes*, 239

7    F.R.D. at 600.  Rather than address this fatal flaw in his argument, Mr. Hussain instead asserts that

8    the documents he seeks are not hearsay because they "will comprise witnesses' prior statements

9    (*e.g.*, interview memoranda), present sense impressions (*e.g.*, correspondence during or about HP's

10   scant due diligence), or HP business records (internal notes, minutes, and email records kept in the

11   course of HP's business)."  (Opp'n at 2.)  Mr. Hussain's invocation of hearsay exceptions is not

12   supported by case law and is inconsistent with the Federal Rules of Evidence.

13   For a witness' statement to be excluded from the definition of hearsay, it must be a prior

14   inconsistent statement ***and*** must have been given under oath.  *See* Fed. R. Evid. 801(d)(1)(A).  HP

15   has no reason to believe that the responsive materials would be inconsistent with a witness'

16   potential testimony; nor is HP aware of any responsive statements given under oath.  As such, the

17   statements are inadmissible hearsay.  *See, e.g.*, *Reyes*, 239 F.R.D. at 600 (17(c) requests for

18   summaries, notes, and memoranda related to interviews quashed as inadmissible hearsay); *United*

19   *States v. Sanchez*, No. CR S-05-0443 WBS, 2007 U.S. Dist. LEXIS 103945, *3 (E.D. Cal. Jan. 9,

20   2007) (denying authorization to issue 17(c) subpoena because "[w]itness interviews, memoranda,

21   notes, reports, and the debriefings of third parties would clearly appear to be hearsay").

22   To qualify as a present sense impression,[5] and an exception to the hearsay rule, "an out-of-

23   court statement must be nearly contemporaneous with the incident described and made with little

24   chance for reflection," and must be made by someone with personal knowledge of the matter.

25   *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995); *see also Torres v. City of Santa Clara*, No.

26   5:13-cv-01475-PSG, 2014 U.S. Dist. LEXIS 116195, at *9 (N.D. Cal. Aug. 20, 2014) (ruling that

27

28
---
[5] A present sense impression is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."  Fed. R. Evid. 803(1).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

REPLY IN SUPPORT OF NON-PARTY HEWLETT-PACKARD
COMPANY'S AMENDED MOT. TO QUASH SUBPOENA
Case No. 3:16-cr-00462 (CRB)

1    statements made one hour and 15 minutes after the incident do not qualify as present sense

2    impressions); *Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1037 (N.D. Cal. 2006) (finding that

3    a statement was not admissible as a present sense impression where the speaker "'was reflecting

4    on the event' rather than spontaneously reacting to a present sensory experience").

5          That Mr. Hussain points to "correspondence during or about" HP's due diligence as an

6    example of present sense impression reveals his disconnect regarding the hearsay rules.  During

7    HP's due diligence, the parties interacted on an ongoing and regular basis.  While there were

8    written communications between and within the parties, they were not present sense impressions,

9    in that they were not contemporaneous descriptions of the processes and discussions in which the

10   declarant participated or the conclusions the declarant was drawing.  Any correspondence made

11   with the chance for reflection does not qualify.  *See Reyes*, 239 F.R.D. at 600 (holding that "a

12   statement . . . about business activities conducted over the course of several years could not

13   possibly qualify" as a present sense impression).  This is equally true of a person's

14   contemporaneous notes regarding a due diligence conference call, for example.  In that instance,

15   the note-taker lacks personal knowledge of the truth or falsity of the speakers' statements.  *Bemis*,

16   45 F.3d at 1372 (no hearsay exception where declarant was relaying information heard from

17   another person).  Furthermore, the person answering questions (about which notes are taken) is not

18   providing a spontaneous, contemporaneous account of something he or she is experiencing.

19   Rather, the speaker is describing information upon which he or she has had time to ponder.

20         Mr. Hussain is similarly off the mark in asserting that internal notes, minutes, and email

21   records universally qualify under the business record exception to the hearsay rule.  (Opp'n at 2.)

22   *See, e.g.*, *United States v. Collins*, No. 11-CR-00471-DLJ (PSG), 2013 U.S. Dist. LEXIS 36361, at

23   *8-9 (N.D. Cal. Mar. 15, 2013) (quashing subpoena requesting victim's "written and electronic

24   mail and notes or memoranda" and "all communications" amongst the subpoena recipient's

25   employees regarding events at issue as presumptively inadmissible hearsay); *Sanchez*, 2007 U.S.

26   Dist. LEXIS 103945, at *3 (denying authorization to issue 17(c) subpoena because "memoranda,

27   notes, reports, and the debriefings of third parties would clearly appear to be hearsay").

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

REPLY IN SUPPORT OF NON-PARTY HEWLETT-PACKARD
COMPANY'S AMENDED MOT. TO QUASH SUBPOENA
Case No. 3:16-cr-00462 (CRB)

1    To qualify for the business record exception, a record of an act, event, condition, or

2    opinion must satisfy the following requirements: (1) the record was made at or near the time of the

3    incident recorded by – or from information transmitted by – someone with knowledge; (2) the

4    record was kept in the course of a regularly conducted activity of a business; (3) making the record

5    was a regular practice of that activity; (4) the custodian or other qualified witness can testify that

6    these factors have been satisfied; and (5) the opponent cannot establish a lack of trustworthiness.

7    *See* Fed. R. Evid. 803(6).

8    The Remaining Requests for "internal notes, minutes, and email records" fail many of

9    these requirements and the Court should quash them.  *See, e.g.*, *United States v. Rico*, 619 Fed.

10   Appx. 595, 598 (9th Cir. 2015) (finding the district court improperly admitted as a business record

11   a document that "was not prepared in the regular course of business; it was prepared for use in

12   litigation"); *Reyes*, 239 F.R.D. at 600 ("Documents produced in a full-fledged, one-time internal

13   investigation into alleged corporate malfeasance do not fall under [the business record] rubric.");

14   *In re Homestore.com, Inc.*, No. CV 01-11115 RSWL, 2011 WL 291176, at *6 (C.D. Cal. Jan. 25,

15   2011) (audit reports examining irregular transactions and likely made in anticipation of litigation

16   did not qualify as a business record).

17   **3.  Mr. Hussain's Unsupported And Speculative Contentions Are Not Relevant**

18   Mr. Hussain acknowledges that the documents he seeks must be relevant to a fact of

19   consequence in determining the case against him.  (Opp'n at 2, 5.)  In particular, he must show that

20   each request seeks documents that have a "sufficient likelihood" of being "relevant to the offenses

21   charged in the indictment."  *Nixon*, 418 U.S. at 700.  It is "not enough [to] have some potential for

22   relevance . . . ." (*United States v. Roque*, No. CR 13-829 PA, 2014 U.S. Dist. LEXIS 197123, at *5

23   (C.D. Cal. Aug. 18, 2014)), and the proponent has a "duty to at least articulate how it believes the

24   evidence sought to be evidentiary and relevant. Conclusory arguments as to relevance are not well

25   received." *Pac. Gas & Elec. Co.*, 2016 U.S. Dist. LEXIS 40587, at *34, citing *United States v.*

26   *Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981) (subpoena proponent "failed to make any show of

27   relevancy other than mere conclusory statements").  Rather than explaining how each request is

28   relevant, Mr. Hussain instead concocts theories with no basis in fact or law.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

REPLY IN SUPPORT OF NON-PARTY HEWLETT-PACKARD
COMPANY'S AMENDED MOT. TO QUASH SUBPOENA
Case No. 3:16-cr-00462 (CRB)

### i.   Request No. 45: All PricewaterhouseCoopers ("PwC") Materials

Mr. Hussain demands "[a]ll reports, memoranda, briefing notes, and documents prepared by PwC summarizing its investigation or analysis regarding HP's acquisition of Autonomy and/or Autonomy's pre-acquisition accounting," claiming that they are relevant because: (1) PwC's work was used as a basis of the "rebasing" exercise, which eventually supported HP's $8.8-million write-down in November 2012; and (2) the government intends to rely on PwC's work in its case against Mr. Hussain.  (Opp'n at 9-10.)  Mr. Hussain is wrong.

*First*, PwC's work was not used as the basis for HP's internal "rebasing" exercise or indeed for any aspect of the accounting adjustments HP deemed appropriate in relation to the Autonomy entities.  HP reached its own conclusions as to the fraudulent accounting it identified within the Autonomy entities and made appropriate accounting adjustments to correct the misstatements.

*Second*, the November 2012 write-down is irrelevant to the charges against Mr. Hussain and is referenced nowhere in the Superseding Indictment.  *See Nixon*, 418 U.S. at 700 (proponent must demonstrate that each request has "sufficient likelihood" of being "relevant to the offenses charged in the indictment"); *United States v. Nguyen*, No. 13-cr-00295-RMW-1 (HRL), 2016 U.S. Dist. LEXIS 63673, at *2 (N.D. Cal. May 13, 2006) (quashing requests as irrelevant to the elements of the crime).  Likewise, PwC was not retained by HP to assist in the write-down and provided no advice in relation to it.  While PwC's preliminary examination of the accounting for certain Autonomy transactions identified non-conformance with International Financial Reporting Standards ("IFRS"), Mr. Hussain already possesses the March 2013 PwC report (the "Interim Report") that sets out those findings and there is no basis to argue for further disclosure.

*Third*, HP retained independent counsel who, in turn, retained an accounting firm to assist in investigations pertaining to a suspected fraud.  Where, as here, prima facie evidence of fraud is discovered, it is inevitable (and appropriate) that the instructing attorneys will disclose some of the accounting analysis to prosecutorial authorities.  Mr. Hussain cites only one meeting involving PwC (during the five years that PwC has been retained).  It does not follow that, where those same authorities decide to pursue a criminal case, the defendants are entitled to obtain all work product of the retained accounting firm, regardless of its relevance.  This is a fishing expedition based on

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

REPLY IN SUPPORT OF NON-PARTY HEWLETT-PACKARD
COMPANY'S AMENDED MOT. TO QUASH SUBPOENA
Case No. 3:16-cr-00462 (CRB)

an unspecific, overly broad demand.  *Booth*, 2011 U.S. Dist. LEXIS 142205, at *4 ("The best clue as to the intent to 'fish' is the repeated use of the words 'any,' 'all,' and 'any and all.'").

*Fourth*, Mr. Hussain's own words – "(i) the USAO told HP that its experts wanted to review PwC's reports 'for their work'; (ii) it has instructed PwC…to prepare a summary… and (iii) on at least one occasion, the government has met directly with PwC…" – aptly demonstrate his improper use of a Rule 17 subpoena as an end-run around criminal discovery properly sought from the government.  "Rule 17(c) was not intended to expand the scope of criminal discovery under Rule 16."  *Johnson*, 2007 U.S. Dist. LEXIS 95834, at *5 (citing *Bowman Dairy Co.,* 341 U.S. at 220).  Furthermore, the Ninth Circuit has made clear that a subpoena proponent must "demonstrate that the subpoenaed materials are not available from any other source."  *Eden*, 659 F.2d at 1381.  If, as Mr. Hussain claims, these materials are part of the government's intended case, they are readily and properly discoverable from the government and therefore available to Mr. Hussain from sources other than HP.

Mr. Hussain asserts that "PwC's views on Autonomy's accounting, and its analysis of HP's allegations, are all relevant" because they "show that the dispute here is one of differences between US and UK accounting policies; they are relevant to assessing HP's claim that it lost billions of dollars; and they are necessary to understand positions the government's accounting expert will take." (Opp'n at 10.)  Mr. Hussain is well aware from the Interim Report that these issues are not ones of difference in UK and US accounting policy.  He will have the opportunity, in due course, to understand the position that any government accounting expert will take and does not need access to PwC's draft or final work product, produced some years ago in many instances, to obtain that understanding.  Any accounting experts retained by the government will be required to reach their own conclusions, and these conclusions will be independent of those reached by PwC in its Interim Report.

In addition, the PwC materials are classic hearsay as they were prepared in connection with an investigation of financial irregularities and other activities outside the scope of HP's normal business.  *See Rico*, 619 Fed. Appx. at 598 (finding the district court improperly admitted as a business record a document that "was not prepared in the regular course of business; it was

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

REPLY IN SUPPORT OF NON-PARTY HEWLETT-PACKARD
COMPANY'S AMENDED MOT. TO QUASH SUBPOENA
Case No. 3:16-cr-00462 (CRB)

1   prepared for use in litigation"); *Reyes*, 239 F.R.D. at 600 ("Documents produced in a full-fledged,

2   one-time internal investigation into alleged corporate malfeasance do not fall under [the business

3   record] rubric."); *In re Homestore.com, Inc.*, 2011 WL 291176, at *6 (audit reports of irregular

4   transactions and likely made in anticipation of litigation did not qualify as business records).

5          Finally, the documents Mr. Hussain seeks are protected by the attorney-client privilege and

6   the attorney work product doctrine.  Mr. Hussain argues that HP waived privilege as to these

7   documents because it produced the Interim Report to the government.  (Opp'n at 10.)[6]  The

8   Interim Report was created in response to a request by the UK's Serious Fraud Office and, as a

9   result, was not a privileged document.  *See In re McKesson HBOC, Inc. Secs. Litig.*, No. No. C-99-

10  20743 RMW, 2005 U.S. Dist. LEXIS 7098, *22 (N.D. Cal. Mar. 31, 2005) (finding that a report

11  prepared to be shared with the government was not privileged because "[w]here, as here, there is

12  an agreement by the client that provides for the disclosure to a third party of the communications

13  between a client and attorney in advance of those communications being made, the

14  communications disclosed pursuant to that agreement are not confidential and the goals of the

15  attorney-client privilege are not in play"); *see also SEC v. Berry*, No. C07-04431 RMW HRL,

16  2011 WL 825742, at *6 (N.D. Cal. Mar. 7, 2011) (disclosure of information in finalized form to

17  the government did not waive protections of underlying notes and drafts).

### ii.   Request Nos. 15, 17, 18, 19: Materials Regarding The Structure And Tax Treatment Of HP's Acquisition Of Autonomy

20         How or where HP structured its acquisition, and the tax consequences of it, are not at all

21  "relevant to the offenses charged in the indictment."  *Nixon*, 418 U.S. at 700.  Mr. Hussain's claim

22  of relevance appears to rest on his plans to wage a jurisdictional defense that he should not be

23  subject to prosecution in the Northern District of California because HP's acquisition of

24  Autonomy was through one of HP's foreign subsidiaries, Bidco.  He is incorrect.

25         The Superseding Indictment clearly sets forth the allegations that, "in the Northern District

26  of California and elsewhere," Mr. Hussain committed wire fraud, conspiracy to commit wire

27  fraud, and securities fraud.  Sup. Ind., ECF No. 52 ¶¶ 15, 26, 28, 30.  Specifically, under Mr.

28

---

[6] HP is unaware of the nature of or basis for Hussain's additional claims of privilege waiver, including his claim that HP allegedly produced certain other documents.  (Opp'n at 10).

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

11

REPLY IN SUPPORT OF NON-PARTY HEWLETT-PACKARD
COMPANY'S AMENDED MOT. TO QUASH SUBPOENA
Case No. 3:16-cr-00462 (CRB)

1   Hussain's direction, Autonomy issued quarterly and annual financial statements to the investing

2   public in the United States, which included false statements.  HP, a U.S. company with its

3   principal office in the Northern District of California, relied on the false statements that he caused

4   Autonomy to make.  *Id*. ¶¶ 13-16, 17-18, 23.  The government alleges a number of overt acts and

5   wire transactions within the United States and the Northern District of California in the

6   Superseding Indictment (*id.* ¶ 26), and explains further in its Opposition to Defendant's Motion to

7   Dismiss Indictment that it has myriad additional evidence of a nexus between Mr. Hussain's

8   conduct and the Northern District of California.  Govt. Opp'n to Mot. To Dismiss.  In fact, "over

9   $3 billion in U.S. dollars held in the name of 'Hewlett-Packard Company' [a U.S. entity] in

10  accounts in New York banks were used to pay for Autonomy's shares."  Govt. Opp'n to Mot. To

11  Dismiss at 12; Sup. Ind., ECF No. 52 ¶ 10.[7]  Whereas jurisdiction is relevant in respect of the

12  charges in the Superseding Indictment, the topics and the related documents regarding HP's

13  acquisition structure and tax treatment are not; nor are these topics relevant to whether this Court

14  has jurisdiction over this matter.

### iii.     Request Nos. 26, 30, 39, 40, 47: Documents Pertaining To HP's Post-Acquisition Conduct

17          In classic "blame the victim" fashion, Mr. Hussain claims that information concerning

18  HP's integration of Autonomy (and even other companies) and its write-down of the Autonomy

19  asset is relevant because HP contributed, at least in part, to the November 2012 write-down, and

20  Mr. Hussain therefore wants to show that: (1) HP's "loss" was at least partially self-inflicted; (2)

21  the effect on HP's shareholders was due, at least in part, to HP's actions; and (3) HP witnesses

22  may be biased in their testimony.  (Opp'n at 12-13.)  These assertions are not only false, they are

23  irrelevant to whether he committed the elements of wire and securities fraud as described in the

24  Superseding Indictment.  First, the write-down is not alleged in the Superseding Indictment.  More

25  importantly, HP's conduct relating to the integration of Autonomy (and other companies) in no

26  [7] Beyond being irrelevant, Mr. Hussain's requests are also nonspecific, requesting either explicitly, or the effective equivalent of, "all" or "any" documents in broad categories of documents.  In fact, Mr. Hussain's own gloss on Request Nos. 15, 17, 18, and 19 – that they "seek non-privileged documents that will show that HP was not, in fact, a party to this acquisition, which was instead structured to occur entirely beyond the borders of the United States"– is significantly narrower than the actual language of the requests.  (Opp'n at 11.)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

REPLY IN SUPPORT OF NON-PARTY HEWLETT-PACKARD
COMPANY'S AMENDED MOT. TO QUASH SUBPOENA
Case No. 3:16-cr-00462 (CRB)

1   way affects the ultimate question of whether Mr. Hussain participated in a scheme or artifice to

2   defraud HP and to induce it to enter into the acquisition in the first place.

3       In urging the relevance of Request No. 47, Mr. Hussain claims that HP witnesses "have

4   told the government – and will undoubtedly testify at trial" – information that is "untrue," and

5   which would allegedly be rebutted by the report he seeks in Request No. 47.  (Opp'n at 14.)

6   Setting aside Mr. Hussain's gross speculation and lack of facts, what he seeks is textbook

7   impeachment material, which is not appropriately sought through a Rule 17 subpoena in advance

8   of trial.  *See Nixon*, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is

9   insufficient to require its production in advance of trial."); *see also Fields*, 663 F.2d at 881 ("This

10  use [for impeachment purposes] is generally insufficient to justify the pretrial production of

11  documents."); *United States v. Cervantes*, No. 12-cr-00792-YGR-12 (KAW), 2016 U.S. Dist.

12  LEXIS 75486, *4 (N.D. Cal. June 9, 2016) (quashing subpoena because "[b]oth the Supreme

13  Court and the Ninth Circuit have held that impeachment is an insufficient basis to clear the hurdles

14  applicable to a Rule 17(c) subpoena").

### 4.    The Court Should Quash The Subpoena On Other Grounds

#### i.    Request No. 42: Summaries, Notes, And Memoranda Of Interviews By HP In-House Counsel Are Disallowed Under Rule 17(h) And Privileged

18      HP has produced to the government, and understands that the government has produced to

19  Mr. Hussain, non-privileged, factual summaries of witness interviews prepared by two of HP's

20  outside law firms – Morgan Lewis & Bockius LLP ("Morgan Lewis") and Proskauer Rose LLP

21  ("Proskauer Rose").  *See* Request Nos. 43 and 44.  In Request No. 42, however, Mr. Hussain seeks

22  materials relating to interviews that internal HP attorneys conducted following the separation of

23  Mr. Hussain and other Autonomy executives from HP and which they prepared in anticipation of

24  litigation against Mr. Hussain.[8]  These materials are privileged and expressly off-limits in a Rule

25  17 subpoena, and the Court should quash this Request.

---

[8] Mr. Hussain's purported concerns about documents related to witnesses that the Government plans to call at trial (Opp'n at 7) are completely misplaced in this context.  While Mr. Hussain is entitled to discovery from the government concerning testifying witnesses, pursuant to *Brady, Giglio*, and the Jencks Act, that is of no consequence in determining whether HP maintains its privilege over materials related to witness interviews conducted by its internal counsel or whether a Rule 17 subpoena request to a third party is appropriately tailored under *Nixon*.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

REPLY IN SUPPORT OF NON-PARTY HEWLETT-PACKARD
COMPANY'S AMENDED MOT. TO QUASH SUBPOENA
Case No. 3:16-cr-00462 (CRB)

1    Mr. Hussain readily admits that he seeks interview memoranda as "witnesses' prior

2    statements" (Opp'n at 2), which Rule 17(h) explicitly prohibits: "No party may subpoena a

3    statement of a witness or of a prospective witness under this rule."

4    In addition, to the extent that Request No. 42 also seeks notes or other materials that do not

5    qualify as factual witness statements, the remaining materials are privileged.  Counsel for HP

6    provided a log of the privileged documents responsive to Request No. 42, showing that internal

7    HP counsel were involved in, and in fact conducted, every interview.  Resley Decl., Exh. 2.  The

8    log also demonstrates that many of the documents at issue are emails and discussions about the

9    interviews among several additional attorneys, including both in-house and outside counsel.  This

10   is classic attorney-client privileged material.  *See Upjohn Co. v. United States*, 449 U.S. 383, 399-

11   400 (1981); *United States v. Nosal*, No. CR-08-0237 EMC, 2013 WL 1402336, at *2-3 (N.D. Cal.

12   Apr. 5, 2013).  It is also attorney work product since the materials were prepared in anticipation of

13   litigation.  *See In re Grand Jury Subpoena*, 357 F.3d 900, 906-10 (2d Cir. 2004).

14   Mr. Hussain argues in the alternative that, to the extent responsive documents are

15   privileged, HP allegedly waived such privilege by producing to the government non-privileged,

16   factual summaries prepared by Morgan Lewis and Proskauer Rose.  (Opp'n at 8.)  That premise

17   defies logic and legal reasoning, and is directly contradicted in relevant case law.  *See In re*

18   *Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420 YGR, 2015 WL 1223972, at *3 (N.D.

19   Cal. Mar. 17, 2015) (no waiver where the disclosed documents contained factual information and

20   did not "contain or relay privileged communications or otherwise protected information").[9]

21   In addition, Mr. Hussain suggests that he will employ the documents responsive to Request

22   No. 42 solely for the purposes of potentially impeaching witnesses.  (Opp'n at 8.)  But *Nixon* and

23   its progeny make clear that the evidence sought must be admissible for purposes *other* than for

---

[9] HP understands from meet and confer discussions that Mr. Hussain may also argue that HP waived privilege by producing factual notes of a meeting between HP counsel and Autonomy's former CEO, Michael Lynch, and his counsel.  A meeting between HP and the intended target of its lawsuit does not implicate the protections of either the attorney-client privilege or the work product doctrine.  *See Upjohn Co. v. United States*, 449 U.S. 383 (1981) (detailing the boundaries and purposes of corporate attorney-client privilege); *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065 (N.D. Cal. 2002 (describing the foundation and requirements of the work product protection).  Further, any factual notes of that meeting would similarly be unprotected by any privilege.  *Lithium Ion Batteries Antitrust Litig.*, 2015 WL 1223972, at *3.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

REPLY IN SUPPORT OF NON-PARTY HEWLETT-PACKARD
COMPANY'S AMENDED MOT. TO QUASH SUBPOENA
Case No. 3:16-cr-00462-CRB (CRB)

impeachment.  *Nixon*, 418 U.S. at 701 ("Generally, the need to impeach witnesses is an insufficient to require production of documents in advance of trial.").

### ii.  Request Nos. 48 and 49:  Deloitte Materials Are Protected By Rule 408 And The Common-Interest Privilege, And Are Cumulative

Mr. Hussain seeks materials leading up to and following the settlement between HP and Deloitte in HP's pending civil litigation in the UK against Mr. Hussain and former Autonomy CEO Michael Lynch.  He is not entitled to communications between Deloitte and HP leading up to the settlement pursuant to Federal Rule of Evidence 408(a)(2), and communications after the settlement are privileged.

Pursuant to Rule 408, communications between Deloitte and HP made during compromise negotiations are inadmissible.  Therefore, Mr. Hussain's request for such materials fails to satisfy the *Nixon* admissibility factor, and the Court should quash the Request.  Mr. Hussain attempts to salvage it by citing *Folb v. Motion Picture Indus. Pension & Health Plans*, in which the court noted in dicta that "Rule 408 only protects disputants from disclosure of information to the trier of fact, not from discovery by a third party."  16 F. Supp. 2d 1164, 1171 (C.D. Cal. 1998).  Mr. Hussain then asserts that HP is "not a 'disputant'" (Opp'n at 15) and, consequently, Rule 408 does not shield HP's information from disclosure.  Mr. Hussain is flatly incorrect.  HP is, in fact, one of only two "disputants" relevant to this analysis, Deloitte being the other.  While his reasoning is anything but clear, Mr. Hussain seems to be arguing in the alternative that, even if HP *is* a disputant, Request No. 48 is nonetheless permissible because Rule 408 does not protect information from discovery by a third party – *i.e.*, Mr. Hussain.  Again, Mr. Hussain has missed the point of the *Folb* dicta, which is that Rule 408 is a rule of evidence, not a rule of discovery.  *Id.* Similarly, Rule 17 focuses not on whether evidentiary materials are discoverable, but rather whether they are admissible (and relevant and specific).  *United States v. Pac. Gas & Elec. Co.*, No. 14-cr-00175-THE, 2016 U.S. Dist. LEXIS 78798, at *7-8 (N.D. Cal. June 16, 2016).  Because Rule 408 expressly states that compromise negotiations are inadmissible, the Court should quash Request No. 48.

While Rule 408 does not explicitly cover post-settlement discussions, the documents sought by Mr. Hussain in Request No. 49 (including notes and communications between Deloitte

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

REPLY IN SUPPORT OF NON-PARTY HEWLETT-PACKARD
COMPANY'S AMENDED MOT. TO QUASH SUBPOENA
Case No. 3:16-cr-00462 (CRB)

1   and HP) are privileged on other grounds.  First, notes, memoranda, and summaries of meetings

2   implicate attorney work product.  To the extent HP shared such documents with Deloitte, they are

3   subject to a common interest privilege.  *See, e.g.*, *Narog v. City of Redwood City*, No. C-13-03237

4   DMR, 2014 WL 1088297, at *4-5 (N.D. Cal. Mar. 17, 2014) (The common interest privilege

5   "operates as an extension to the rule on waiver" where attorney-client privilege or work product is

6   disclosed to third parties, and the common interest privilege "can extend to interested third parties

7   who have a community of interests with respect to the subject matter of the communications.").

8   Additionally, Request No. 49 fails the *Nixon* specificity factor, in that it demands, *inter*

9   *alia*, "*[a]ll* documents and communications regarding *any* HP meetings with Deloitte since the

10   execution of the settlement agreement."  *See Booth*, 2001 U.S. Dist. LEXIS 142205, at *4 ("The

11   best clue as to the intent to 'fish' is the repeated use of the words 'any,' 'all,' and 'any and all.'").

12   Lastly, Mr. Hussain seeks documents well beyond the purported purpose of Request No. 49

13   – "demonstrating a witness's willingness to take certain positions in exchange for a release of

14   claims against him."  He acknowledges the speculative nature of his request – the documents "are

15   likely to demonstrate witnesses' bias" – and concedes that he already has the information

16   necessary to make his claims – *i.e.*, the settlement agreement.  (Opp'n at 14-15.)  Consequently, he

17   is not entitled to the additional responsive materials and the Court should quash Request No. 49.

18   *See United States v. Mason*, No. CR 05-324-RE, 2008 U.S. Dist. LEXIS 34537, *4-7 (D. Or. Apr.

19   25, 2008) (quashing subpoena because: (i) the proponent already had "evidence sufficient to

20   appraise the jury of [the witness'] potential biases and motivations;" (ii) "[w]hatever marginal

21   relevance the other documents might have as to [the witness'] credibility, motive, and bias would

22   likely be outweighed . . . by needless presentation of cumulative evidence;" and (iii) the

23   proponent's arguments that the "records 'may' or 'might' help impeach [the witness'] credibility,

24   or demonstrate bias or motive are nothing more than speculation").

25   **III.   CONCLUSION**

26   Mr. Hussain has failed to meet his burden of establishing the *Nixon* factors and all other

27   Rule 17 requirements with respect to the Remaining Requests.  HP therefore respectfully requests

28   that the Court grant its motion to quash the Remaining Requests.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

REPLY IN SUPPORT OF NON-PARTY HEWLETT-PACKARD
COMPANY'S AMENDED MOT. TO QUASH SUBPOENA
Case No. 3:16-cr-00462 (CRB)

1    Dated:  September 18, 2017                    Respectfully submitted,

2

3                                                 By    /s/Susan D. Resley

4                                                 SUSAN D. RESLEY
                                                  LAUREN N. WENNER
5                                                 KURT B. OLDENBURG
                                                  ELLIE F. CHAPMAN
6                                                 MORGAN, LEWIS & BOCKIUS LLP
                                                  One Market, Spear Street Tower
7                                                 San Francisco, CA 94105
                                                  Telephone:  (415) 442-1000
8                                                 Facsimile:  (415) 442-1001
                                                  susan.resley@morganlewis.com
9
                                                  MARTHA B. STOLLEY
10                                                CAROLYN A. SILANE
                                                  MORGAN, LEWIS & BOCKIUS LLP
11                                                101 Park Avenue
                                                  New York, NY 10178-0060
12                                                Telephone:  (212) 309-6000
                                                  Facsimile:  (212) 309-6001
13                                                martha.stolley@morganlewis.com

14                                                MICHAEL LI-MING WONG
                                                  GIBSON, DUNN & CRUTCHER LLP
15                                                555 Mission Street, Suite 3000
                                                  San Francisco, CA 94105
16                                                Telephone:  (650) 849-5393
                                                  Facsimile:   (650) 442-5093
17                                                mwong@gibsondunn.com
                                                  *Attorneys for Hewlett-Packard Enterprise &*
18                                                *Hewlett-Packard Company*

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN SUPPORT OF NON-PARTY HEWLETT-PACKARD
COMPANY'S AMENDED MOT. TO QUASH SUBPOENA
Case No. 3:16-cr-00462 (CRB)