KEKER, VAN NEST & PETERS LLP
JOHN W. KEKER - # 49092
jkeker@keker.com
JAN NIELSEN LITTLE - # 100029
jlittle@keker.com
BROOK DOOLEY - # 230423
bdooley@keker.com
KATE E. LAZARUS - # 268242
klazarus@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:      415 397 7188

Attorneys for Defendant
SUSHOVAN HUSSAIN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SUSHOVAN HUSSAIN,<br><br>Defendant. | Case No. <u>3:16-cr-00462-CRB</u><br><br>**DEFENDANT SUSHOVAN HUSSAIN'S NOTICE OF MOTIONS & MOTIONS IN LIMINE TO EXCLUDE CERTAIN CATEGORIES OF EVIDENCE; MEMORANDUM OF POINTS AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:        Hon. Charles R. Breyer<br><br>Date Filed:  November 10, 2016<br><br>Trial Date:  February 26, 2018 |

1213372

# TABLE OF CONTENTS

**Page**

I.  MOTION TO EXCLUDE EVIDENCE OF OTHER ALLEGED CRIMES, WRONGS, OR BAD ACTS ....................................................................................1

    A.  Introduction..............................................................................................1

    B.  Legal Standard .........................................................................................1

    C.  Evidence regarding Autonomy analyst Daud Khan...................................2

        1.  Factual Background .......................................................................2

        2.  Argument ......................................................................................3

            a.  The evidence is not admissible under Rule 404(b)........................3

            b.  The evidence should be excluded because it is unduly prejudicial and will cause unnecessary delay. .................................4

    D.  Evidence regarding Autonomy's termination of Brent Hogenson, Percy Tejada, and Reena Presad ...................................................................5

        1.  Factual Background .......................................................................5

        2.  Argument ......................................................................................6

    E.  Evidence of Autonomy's correspondence with the U.K. Financial Reporting Review Panel (FRRP) ...........................................................7

        1.  Factual Background .......................................................................8

        2.  Argument ......................................................................................8

    F.  Conclusion ...............................................................................................9

II.  MOTION TO EXCLUDE EVIDENCE OF FINANCIAL REPORTING COUNCIL INVESTIGATION.......................................................................10

III.  MOTION TO EXCLUDE TESTIMONY AND DOCUMENTS CONCERNING CHAMBERLAIN AND KANTER LAPTOPS ..............................................11

IV.  MOTION TO EXCLUDE EVIDENCE OF COLORFUL AND PREJUDICIAL AUTONOMY "ANTICS" ..........................................................................12

1213372

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

V.   MOTION TO EXCLUDE CERTAIN TESTIMONY OF THE GOVERNMENT'S
ACCOUNTING EXPERT MR. STEVEN BRICE ........................................................12

    A.   Factual Background ............................................................................13

    B.   Legal Standard ....................................................................................14

    C.   Argument .............................................................................................14

        1.   Sixty-Seven Transactions..........................................................14

        2.   Top 40 Lists ...............................................................................15

    D.   Conclusion ...........................................................................................15

VI.   OBJECTIONS TO GOVERNMENT WITNESSES AND EXHIBITS ...........................16

1213372

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Daubert v. Merrell Dow Pharms., Inc.*
509 U.S. 579 (1993) ..................................................................... 14

*Huddleston v. United States*
485 U.S. 681 (1988) ....................................................................... 3

*Kumho Tire Co. v. Carmichael*
526 U.S. 137 (1999) ..................................................................... 14

*Lust v. Merrell Dow Pharms., Inc.*
89 F.3d 594 (9th Cir. 1996) ......................................................... 14

*Stilwell v. Smith & Nephew, Inc.*
482 F.3d 1187 (9th Cir. 2007) ..................................................... 14

*United States v. Bailey*
696 F.3d 794 (9th Cir. 2012) ......................................................... 9

*United States v. Boise*
916 F.2d 497 (9th Cir. 1990) ......................................................... 3

*United States v. Hermanek*
289 F.3d 1076 (9th Cir. 2002) ..................................................... 14

*United States v. Lawrence*
189 F.3d 838 (9th Cir. 1999) ......................................................... 9

*United States v. Mehrmanesh*
689 F.2d 822 (9th Cir. 1982) ......................................................... 1

*United States v. Preston*
873 F.3d 829 (9th Cir. 2017) ...................................................... 1, 2

## Federal Rules

Fed. R. Crim. P. 16(a)(1)(G) ....................................................... 14

Fed. R. Evid. 401 ......................................................................... 10

Fed. R. Evid. 402 ........................................................................... 1

Fed. R. Evid. 403 ........................................................................ 2, 4

Fed. R. Evid. 404(b) ........................................................... 1, 3, 7, 8, 9

1213372

Fed. R. Evid. 702 ................................................................................................................ 14

Fed. R. Evid. 702(a) ........................................................................................................... 15

iv

1213372

**NOTICE OF MOTIONS AND MOTIONS**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD IN THIS ACTION:**

PLEASE TAKE NOTICE that on February 6, 2018 at 2:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6, 17th Floor, of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA  94102, Defendant Sushovan Hussain will and hereby does move *in limine* to exclude reference to or introduction of the following evidence:

1.    Any evidence, testimony, or argument regarding (1) alleged actions by Autonomy toward Mr. Daud Khan; (2) terminations of employees of Autonomy's U.S. finance department; and (3) correspondence with the U.K. Financial Reporting Review Panel.

2.    Any evidence, testimony, or argument regarding Mr. Steven Chamberlain's laptop or Mr. Andrew Kanter's laptop.

3.    Any evidence, testimony, or argument regarding antics within Autonomy.

4.    Any evidence, testimony, or argument regarding the Financial Reporting Council's investigation into HP's allegations of accounting impropriety at Autonomy.

5.    Mr. Steven Brice's proposed testimony (*a*) that Autonomy improperly recognized revenue in connection with 67 transactions between 2009 and 2011 or (*b*) regarding Autonomy's top contracts and customers.

//
//
//
//
//
//
//
//
//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

These motions are based upon the instant notice, the attached memorandum of points and authorities, the records in this case, and upon such argument as may be made at the hearing on February 6, 2018.

Dated:  December 8, 2017                                    KEKER, VAN NEST & PETERS LLP

By:    /s/ Kate E. Lazarus
                                                                              JOHN W. KEKER
                                                                              JAN NIELSEN LITTLE
                                                                              BROOK DOOLEY
                                                                              KATE E. LAZARUS

                                                                              Attorneys for Defendant
                                                                              SUSHOVAN HUSSAIN

1213372

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   MOTION TO EXCLUDE EVIDENCE OF OTHER ALLEGED CRIMES, WRONGS, OR BAD ACTS

### A.   Introduction

Defendant Sushovan Hussain hereby moves to exclude evidence of uncharged conduct and other acts.  On September 1, 2017, the government advised Mr. Hussain that it may seek to introduce evidence, pursuant to Federal Rule of Evidence 404(b), about alleged interactions with Daud Khan, a JP Morgan securities analyst who covered Autonomy.  The government's September 1 letter also indicated the government "may introduce evidence" regarding the terminations of certain employees of Autonomy's finance department and correspondence with a U.K. regulator.  This conduct is outside the scope of the charges in this case, and to the extent it involves Mr. Hussain at all, it does so only tangentially.  The government should not be permitted to introduce this evidence for the mere purpose of suggesting to the jury that Mr. Hussain or his colleagues were bad or dishonest people.  Such evidence should be excluded as irrelevant under Federal Rules of Evidence 401 and 402 and inadmissible under the standards laid out in Rules 403 and 404(b).

### B.   Legal Standard

Under Rule 404(b), evidence of bad acts may not be admitted to show criminal propensity, but instead may be admitted only to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  "[I]n introducing other act evidence, the government always must show: (1) that the act tends to prove a material element or point, (2) that the act is not too remote in time from the crime charged, and (3) that the evidence is sufficient to support a finding that the defendant committed the subsequent act." *United States v. Preston*, 873 F.3d 829, 840 (9th Cir. 2017).  "When seeking to introduce other act 404(b) evidence for the purpose of proving intent, the proposing party must [also] show that the other act is similar to the offense charged." *Id.* (internal quotation marks omitted).  It is the government's burden to "articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir.

1982).  Moreover, "[e]ven where 404(b) evidence falls within a permitted purpose, it should be excluded, under Rule 403, if the court finds that its probative value is substantially outweighed by a danger of unfair prejudice."  *Preston*, 873 F.3d at 840.

### C.    Evidence regarding Autonomy analyst Daud Khan

Mr. Hussain moves to preclude the government from referring to, or presenting evidence about, allegedly improper interactions between Mr. Khan and members of Autonomy's management.  Such evidence should be excluded because it is irrelevant, highly prejudicial, and will inject unnecessary complexity into the trial.

### 1.    Factual Background

In its letter of September 1, 2017, the government stated it may introduce evidence that: (1) at a 2008 meeting with "Mr. Hussain and others," Mr. Khan "was threatened Autonomy would 'take steps' if he published a research note"; (2) "after the meeting Autonomy threatened to give alleged evidence of wrongdoing by Khan to the FSA if Khan published a research note"; and (3) Mr. Khan was prohibited from attending Autonomy quarterly earnings calls from Q2 2008 through 2009.  The government's use of the passive voice in describing this purported conduct is telling.  According to the government's own interview summaries and document productions, Mr. Hussain was not responsible for any of these actions.

Mr. Khan told the government that at a meeting in early 2008, Dr. Michael Lynch, Autonomy's CEO, stated that if Mr. Khan's draft research note regarding Autonomy was published, Autonomy would "take steps."  9/23/15 302, 3.  Mr. Khan did not describe any statements made by Mr. Hussain at that meeting.  Mr. Khan's boss, David Knox, who was also at the meeting, said that Mr. Hussain "was relaxed, pleasant, and helpful" and "very good with the numbers."  Knox 5/5/16 302, 2.  Mr. Khan's draft research note did not address any issues related to the allegations or transactions at issue in this case.

Mr. Khan claimed that in a later phone call, Autonomy Chief Operating Officer and General Counsel Andrew Kanter told Mr. Khan that he may have violated U.K. Financial Services Authorities ("FSA") rules and implied there was an FSA investigation regarding Mr. Khan.  Mr. Khan told the government he was not able to verify if there was an investigation,

but such information would have been confidential and not necessarily available to Mr. Khan. Regardless, Mr. Khan did not state that he ever spoke to Mr. Hussain about any investigation, much less that Mr. Hussain made any threat, and the documents produced by the government show that Mr. Hussain did not correspond with Mr. Khan or anyone else at JP Morgan regarding any investigation.

Mr. Khan claimed he was not invited to Autonomy's earnings calls from Q2 2008 through 2009. 9/23/15 302, 5.[1]  However, neither Mr. Khan nor anyone else ever stated that it was Mr. Hussain who excluded Mr. Khan from any earnings call.  In fact, Mr. Khan's colleague at JP Morgan wrote in an email at the time, "I thought Sushovan and I had 'cleared the air' on this matter."  *See* JPMC-AU-DOJ-00007677.

### 2.  Argument

#### a.  The evidence is not admissible under Rule 404(b).

The proffered information regarding Mr. Khan is irrelevant and should be excluded.  First, the proffered evidence is nothing more than an improper and baseless attack on Mr. Hussain's colleagues, a red herring intended to portray Mr. Hussain as guilty by association.  According to the government's own evidence, decisions about Mr. Khan were handled by other members of Autonomy's management, and no witness or document suggests that Mr. Hussain threatened Mr. Khan or excluded him from any calls.  Evidence about purported acts that Mr. Hussain did not himself commit is not admissible under Rule 404(b). "[S]imilar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that ***the defendant was the actor***." *Huddleston v. United States*, 485 U.S. 681, 689 (1988) (emphasis added); *see also United States v. Boise*, 916 F.2d 497, 502 (9th Cir. 1990) (evidence of prior injuries was relevant "only if the jury could reasonably conclude that the injuries occurred and that [the defendant] inflicted them").  Here, there is no basis to conclude that Mr. Hussain was responsible for any purported misconduct vis-à-vis Mr. Khan, and therefore the evidence is inadmissible.

---

[1] Contradictorily, Mr. Khan stated that Autonomy told one of its investors that Mr. Khan had always been free to attend the calls, and when Mr. Khan then asked Autonomy if he was invited, Mr. Khan was told he was.

Second, the alleged bad acts evidence almost entirely predates the period of the alleged fraud, which begins in January 2009. *See* Superseding Indictment ¶ 19. According to the government's evidence, the meeting with Mr. Khan, the alleged threats made to Mr. Khan, and the alleged decision not to invite him to earnings calls all happened in 2008, and thus do not temporally overlap with the alleged schemes charged in the Superseding Indictment.

In short, the purported extrinsic acts are unrelated to the defendant and unrelated to the alleged fraud, and thus should be excluded.

### b.     The evidence should be excluded because it is unduly prejudicial and will cause unnecessary delay.

Even if the Court were to conclude that evidence about Mr. Khan is relevant and admissible under 404(b), such evidence should be excluded under Rule 403 because it will be misleading, confusing, and unduly prejudicial, and it will inject needless complexity into the trial.

First, the proffered evidence regarding Mr. Khan has very little bearing on the elements that the government must prove, but presents a real risk of leading the jury to believe that Mr. Hussain is deserving of punishment based on innuendo about his colleagues' actions. The jury should not be invited to rely on evidence that Mr. Khan may have felt mistreated by people other than Mr. Hussain. If the proffered evidence is admitted, the jury might be tempted to infer from other peoples' alleged dispute that Mr. Hussain had something to hide. But the government has charged only one defendant, and its case turns on Mr. Hussain's own actions and state of mind.

Second, the introduction of this evidence would require a trial-within-a-trial regarding the propriety of Mr. Khan's own conduct and the rationale behind Autonomy's response. The jury would need to understand the rules governing securities analysts in the United Kingdom, details about Mr. Khan's coverage (including instances when he may have improperly sought non-public information), the status of an FSA investigation, and the nature of Autonomy's investigation and response to concerns about Mr. Khan's work. Any relevance of Autonomy's treatment of Mr. Khan turns in large part on Mr. Khan's conduct, which will need to be explored via

documents and testimony from a number of witnesses.[2]  This line of inquiry would fall out of the case entirely if the proffered extrinsic evidence about Mr. Khan is excluded.

In sum, other acts evidence about Mr. Khan's interactions with Autonomy will create an irrelevant and misleading sideshow, and should be excluded.

### D.    Evidence regarding Autonomy's termination of Brent Hogenson, Percy Tejada, and Reena Presad

The government's 404(b) notice indicates that it may also seek to introduce evidence that Autonomy terminated three employees who worked in the U.S. finance department: Brent Hogenson, Percy Tejada, and Reena Prasad.  Mr. Hussain moves to exclude that evidence because he had almost no connection to those events; the evidence would unfairly bias jurors by falsely implying that senior management retaliated against Mr. Hogenson and his team; and the evidence would beget trials-within-a-trial, resulting in significant confusion and delay.

### 1.    Factual Background

Mr. Hogenson was the CFO of Autonomy in the Americas.  His team included Mr. Tejada and Ms. Prasad.  In the spring of 2010, Autonomy discovered fraud in the payroll department overseen by Mr. Hogenson.  Autonomy's CEO (Dr. Michael Lynch) put U.S. General Counsel Joel Scott in charge of the investigation.  Mr. Scott hired one outside firm to investigate the fraud and a second to review the finance team's practices.  All outside investigators reported to Mr. Scott.  Mr. Hussain, as CFO, provided information to Mr. Scott and the investigation as needed.

The investigations revealed that multiple employees had embezzled funds on Mr. Hogenson's watch, and separately that Mr. Hogenson had violated numerous company policies.  Mr. Hogenson paid reseller fees without approval, returned funds to customers without approval, engaged in questionable travel, submitted false expense reports, and ran a department that lacked controls sufficient to detect and prevent the payroll fraud.  Following the investigations, senior

---

[2] Moreover, Mr. Hussain's ability to present a defense on this issue is severely limited by the government's improper tactics.  The government hauled Mr. Hussain to the United States and then deployed a lengthy co-conspirator list to chill the participation of foreign witnesses, including Mr. Hussain's Autonomy colleagues.  The government should not be allowed to bring Mr. Khan to court to tell one half of a story, while impeding Mr. Hussain's ability to tell the other half.

management instituted new safeguards in consultation with Autonomy's auditor (Deloitte) and the Audit Committee, including requiring Mr. Scott to oversee the U.S. finance department, consolidating the department in San Francisco, and requiring the department to seek additional authorizations from management in England.  As CFO, Mr. Hussain announced these changes.

It was left to Mr. Scott to decide whether any employees implicated in the U.S. finance investigations should be terminated.  Mr. Scott has told the government that he "felt, from day one, that there was something odd and untrustworthy about [Mr.] Hogenson," and that Mr. Hogenson "acted based on his own agenda and that agenda did not appear to be doing the right thing for the sake of doing the right thing."  Mr. Scott elected to terminate Mr. Hogenson based on the violations discovered in the investigations.  Mr. Scott also elected to terminate Mr. Hogenson's team members, Mr. Tejada and Ms. Prasad, who were at-will employees.

Later, the terminated employees threatened suit for wrongful termination.  Chief Operating Officer Andrew Kanter approved a settlement with each employee, in which there was no admission of liability.  Mr. Hussain was not involved in the negotiations, though, as CFO, he approved a resulting wire transfer.

Around the same time that the payroll fraud was discovered in June 2010, Mr. Hogenson raised concerns about Autonomy's accounting with senior management, Autonomy's auditor, and the Audit Committee of Autonomy's Board.  Deloitte reviewed Mr. Hogenson's allegations and concluded there were no problems.  The Audit Committee concurred.  Mr. Hogenson brought his concerns to the U.K. Financial Services Authority and the U.S. Securities and Exchange Commission, but neither agency took action.

## 2.    Argument

This Court should exclude evidence of the U.S. finance terminations for three reasons.  First, it is not relevant because Mr. Hussain had little connection to these events.  Mr. Scott hired the investigators, ran the investigations, had sole authority to decide if anyone would be terminated, terminated each employee, and informed each employee personally of his decision.  Mr. Hussain, by contrast, provided limited information to Mr. Scott as needed for the investigations and announced the company's agreed-upon safeguards following the completion of

Mr. Scott's investigations.  In short, Mr. Hussain was not responsible for the terminations and these "other acts" do not fit within any of the Rule 404(b) exceptions.  *See* Fed. R. Evid. 404(b).

Second, this evidence would unfairly bias jurors by falsely implying that Autonomy retaliated against Mr. Hogenson's team for raising concerns about the company's accounting. Jurors could insinuate this false connection based on the timing of events, even though the employees were actually terminated because of the payroll fraud and policy violations discovered in the investigations.  This unsubstantiated insinuation would significantly and unfairly prejudice Mr. Hussain.

Third, this evidence would beget trials-within-a-trial.  Mr. Hussain would be forced to dive deeply into the payroll fraud to rebut the false suggestion that Autonomy retaliated against three putative whistleblowers.  Records relating to Mr. Scott's investigations would need to be introduced, as would testimony from multiple witnesses about the severity of the fraud and the evidence of Mr. Hogenson's (undisputed) rule violations.  This would devolve into a distracting and irrelevant detour as the parties debated the reasons for the terminations, which in any event were *Mr. Scott's* choice—not Mr. Hussain's.  All told, any probative value would pale in comparison to the inevitable confusion and delay.

In sum, this Court should exclude evidence and argument relating to Autonomy's terminations of Brent Hogenson, Percy Tejada, and Reena Prasad because the terminations are not relevant and any probative value is substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, and undue delay.

**E.      Evidence of Autonomy's correspondence with the U.K. Financial Reporting Review Panel (FRRP)**

The government's 404(b) notice also indicates that it may introduce evidence that Mr. Hussain "made false and misleading statements in letters to the FRRP between 2010 and 2011." Mr. Hussain did not make materially misleading statements in those letters and moves to exclude them because they are tangential to the charges and would confuse and mislead the jury.

### 1.     Factual Background

Brent Hogenson was the CFO of Autonomy in the Americas.  In 2010, he raised concerns about Autonomy's accounting with senior management, the Audit Committee, and Deloitte. Deloitte investigated the accusations and concluded there were no problems.  Mr. Hogenson nevertheless was unsatisfied.  He wrote to the U.K.'s Financial Services Authority (FSA) to press his concerns.  Autonomy wrote to the FSA shortly after.  The FSA reviewed the information it received and elected not to pursue an investigation.

The FRRP is part of the U.K.'s Financial Reporting Council (FRC).  It reviews and investigates public companies' annual accounts.  The FRRP learned of Mr. Hogenson's concerns and wrote Autonomy with follow-up questions.  The agency sought information about various Autonomy transactions and the company's relationship with resellers.

Autonomy's response was reviewed and approved by Deloitte, and signed by Mr. Hussain in his capacity as CFO.  Autonomy explained that Mr. Hogenson's allegations were thoroughly investigated, "[t]he investigation found no substantive issues," "many points fell below the [company's] materiality threshold," and "all relevant information had been previously supplied to Deloitte."  Autonomy then addressed the FRC's inquiries, and attached to its response a copy of Deloitte's report to the Audit Committee examining and dismissing Mr. Hogenson's allegations.

The FRRP corresponded with Autonomy twice more about these topics in 2011. Ultimately, the agency informed Autonomy that it did not intend to pursue any of the referenced matters.

### 2.     Argument

Autonomy's correspondence with the FRRP is not admissible under Rule 404(b) because it is not material to the charges in the indictment.  The government has not identified the correspondence it seeks to introduce, much less any specific false or misleading statements.  Nor has it disclosed on its witness list any witness from the FRRP who could explain the correspondence, identify any misstatements, or testify to the materiality of such statements. Indeed, the only hint that the defense has about the government's intentions comes from HP's civil suit against Autonomy in England.  There, HP objected to the accuracy of certain words and

1213372

phrases in Autonomy's responses to the FRRP's inquiries such as "almost unique," "virtually never happens," and "comprehensive."  This kind of linguistic hair-splitting does not add up to materially misleading statements, and the government should not be allowed to bolster its case against Mr. Hussain with such allegations.  Absent a concrete indication that the letters include materially misleading statements, the correspondence does not "tend[] to prove a material point" as required by Rule 404(b).  *See United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012).  The Court should therefore exclude the correspondence.

The letters should also be excluded because they would confuse the issues significantly and mislead the jury.  Mr. Hussain is being accused of defrauding either the market or Hewlett-Packard—not a U.K. government regulator—yet the letters may cause a jury to erroneously convict him of the former crime based upon evidence of the latter.  The correspondence, in other words, would confuse and mislead the jury into focusing on evidence tangential to the crimes charged.  Any probative value would be significantly outweighed by this prejudicial effect.  *See United States v. Lawrence*, 189 F.3d 838, 843 (9th Cir. 1999) (affirming exclusion of minimally relevant evidence because its probative value was "easily outweighed by the unfair prejudicial effect it had on the jury's ability to focus on the issues relevant to the charges").

This correspondence would also prejudice Mr. Hussain by needlessly highlighting that government regulators investigated his company, and by falsely suggesting that the FRRP correspondence led to a formal complaint.  It did not.  And this Court should not permit the government to unfairly prejudice Mr. Hussain by casting his company unjustifiably in a negative light.

## F.    Conclusion

For the foregoing reasons, Mr. Hussain respectfully requests that the Court preclude the government from referring to, or presenting evidence about, (1) alleged actions by Autonomy management towards Mr. Khan; (2) the terminations of employees of Autonomy's U.S. finance department; and (3) Autonomy's correspondence with the U.K. Financial Reporting Review Panel.

## II.     MOTION TO EXCLUDE EVIDENCE OF FINANCIAL REPORTING COUNCIL INVESTIGATION

As the Court knows, the Financial Reporting Council ("FRC") is a quasi-governmental body that regulates and disciplines accountants and auditors in the United Kingdom.  Since HP's November 2012 write down, the FRC has been conducting an investigation into HP's allegations of accounting impropriety at Autonomy (separate and apart from their review of Mr. Hogenson's allegations, discussed above).  The FRC has held no public hearings, nor has it reached any conclusions about HP's claims; by all accounts, it will be months, possibly years, before it does.  As part of its investigation, however, the FRC compelled testimony (in the form of transcribed witness interviews) from Mr. Hussain and Autonomy's auditors.  *See generally* ECF No. 72 at 2–5.  The government briefly sought to compel production of those transcripts in this case, but given the Court's concerns about Mr. Hussain's Fifth Amendment rights, it backed down.  *See, e.g.*, ECF No. 97 (Hr'g Tr. (July 17, 2017)), 25:20–24 (acknowledging that the United States would not be entitled to statements that were compelled).

Mr. Hussain now moves to exclude discussion of, or the introduction of any evidence related to, the FRC's ongoing investigation for several reasons:

First, the mere fact of those investigations—especially now, when no hearings have been held and no conclusions reached—is irrelevant here.  *See generally* Fed. R. Evid. 401 (evidence only relevant if it has a "tendency to make a fact more or less probable than it would be without the evidence" *and* it is "of consequence in determining the action").  That Mr. Hussain is also being investigated abroad does nothing to render the government's allegations more or less probable; it demonstrates only that HP followed through with its 2012 threat to refer this matter to as many state actors as it could.

Second, any reference to those investigations would run the serious risk of confusing the jury and leading to unfair prejudice.  Although the existence of another, foreign investigation does not increase the likelihood that Mr. Hussain committed the charged crimes, it introduces an unnecessary risk that jurors will presume guilt simply on the basis of additional "smoke."  What's more, it would be unfair to reference the FRC's investigations without explaining the status of

1213372

1  those proceedings, or the ways in which the FRC's case differs, necessitating yet another trial-

2  within-a-trial.

3        Third, as the Court knows from the July 17 hearing, the FRC's investigation raises serious

4  Fifth Amendment problems.  Mr. Hussain was compelled to testify by a foreign regulatory body

5  at an interview from which defense counsel was barred.  H'rg Tr. (July 17, 2017), 9:3–10 ("THE

6  COURT:  [W]as he not threatened that if he didn't speak to the British authorities he would be

7  subject to disbarring or suspension? … [T]he threat of disbarment and the loss of professional

8  standing … and of livelihood are powerful forms of compulsion.").  Indeed, much of what the

9  government knows about the FRC's investigation, which remains non-public, is the result of its

10  close cooperation with a foreign regulatory body—cooperation that may already have created

11  *Kastigar* problems.

12        The FRC's investigation adds nothing to this case, but will confuse the jury and is likely

13  to lead to unfair prejudice against Mr. Hussain.  Any mention of those proceedings should be

14  excluded.

15  ### III.    MOTION TO EXCLUDE TESTIMONY AND DOCUMENTS CONCERNING

16            CHAMBERLAIN AND KANTER LAPTOPS

17        The government's witness list includes as witnesses Christopher Chan, an Autonomy

18  Junior Systems Administrator, and Michael Menz, from HP's Investigations and Forensics unit.

19  Based on a review of interview reports produced by the Government, it appears that Mr. Chan

20  will be called to testify about (1) a request made to Chan by Autonomy General Counsel/COO

21  Andrew Kanter to "wipe clean" the laptop of Autonomy Controller *Steven Chamberlain* in May

22  2012, which request Mr. Chan in turn reported to Mr. Menz; (2) emails dated May 11 and 16,

23  2012, concerning the Chamberlain laptop; and (3) evidence that Chan's "team" reviewed security

24  videotapes showing that an administrative assistant removed *Mr. Kanter's* laptop from a cabinet.

25        None of this evidence concerning Mr. Chamberlain's laptop or Mr. Kanter's laptop should

26  be allowed in Mr. Hussain's trial.  Whatever may or may not have been done with

27  Mr. Chamberlain's or Mr. Kanter's laptops, and for what purpose, there is no suggestion

28  whatsoever that Mr. Hussain had anything to do with it, or had any knowledge of these actions.

This evidence has no probative value with respect to the charges against Mr. Hussain, would be greatly prejudicial, and would inject irrelevant and confusing side issues into the trial. In addition, testimony of Mr. Chan concerning his team's review of security footage, and of Mr. Menz concerning what Mr. Chan told him, is hearsay. The evidence should be excluded.

## IV.   MOTION TO EXCLUDE EVIDENCE OF COLORFUL AND PREJUDICIAL AUTONOMY "ANTICS"

The Government may also try to introduce information about silly, but innocuous, attempts at humor within Autonomy, in an effort to smear and prejudice Mr. Hussain. For example, Mr. Chan has apparently advised the Government that conference rooms at Autonomy were named after "James Bond Villains" and that a fish tank at Autonomy contained piranhas. And Exhibit 2509 on the Government's witness list is a parody video shown at an Autonomy event in which Autonomy executives, including Mr. Hussain, were costumed as "mobsters." There may be other comic/parody evidence offered by the government. Mr. Hussain is on trial for his life. Such "comic" material has no place in a serious trial. And the prejudice resulting from associating Mr. Hussain with villains, mobsters, or vicious animals, is obvious. This and similar evidence should be excluded.

## V.   MOTION TO EXCLUDE CERTAIN TESTIMONY OF THE GOVERNMENT'S ACCOUNTING EXPERT MR. STEVEN BRICE

The government retained Mr. Steven Brice as an accounting expert to opine on whether Autonomy properly recognized revenue from its software sales between 2009 and 2011.[3] Mr. Hussain moves to exclude Mr. Brice's opinion that Autonomy improperly recognized revenue in connection with 67 transactions because his report does not include any analysis as

---

[3] Mr. Brice prepared a "summary of expert accounting opinions," which the government served on defense counsel on October 31, 2017 (the "Brice Report"). The Brice Report is stamped "private and confidential," and it relies on—and quotes extensively from—material that cannot be publicly disclosed under the Second Amended Protective Order. ECF No. 40. Mr. Hussain therefore sought to lodge the Brice Report under seal. Mr. Hussain believes it is inappropriate for the Government's 128-page (plus appendices), detailed, confidential expert report to be a part of the public court record. In light of the Court's December 14, 2017 order, ECF No. 150, Mr. Hussain has amended this motion to remove the Brice Report. Defense counsel is willing to make a copy of the report available for *in camera* review if the Court so wishes.

1213372

to 45 of those transactions and his conclusions are thus unsupported.  Mr. Hussain also moves to exclude Mr. Brice's discussion of lists of contracts and customers provided by Autonomy to HP during the acquisition process because it is not expert opinion.

## A.    Factual Background

Mr. Brice was asked to opine on whether Autonomy properly recognized revenue from its software sales between Q4 2008 and Q3 2011.  Brice Report, ¶ 1.2.3.  From a larger list of transactions, Mr. Brice identified a "final sample" of 96 software deals between Autonomy and an identified customer.  *Id.* ¶ 2.1.5; *id.* at App. 1.2.

Based on his "initial review" of the documents, Mr. Brice opined that Autonomy correctly recognized revenue on 29 of the 96 transactions.  *Id.* ¶ 2.3.1.  Mr. Brice correspondingly concluded that the remaining 67 transactions involved an accounting error that required an adjustment to Autonomy's recorded revenue.  *Id.* ¶ 2.3.4.  However, Mr. Brice nowhere describes what his "initial review" of the documents entailed, nor does he explain how he determined that these 67 transactions required an adjustment.  Nonetheless, without disclosing any analysis, he concludes that Autonomy improperly recognized more than $275 million in revenue from these 67 transactions.  *Id.* at tbl. 2.1.

Instead of analyzing all 67 transactions, Mr. Brice undertook "a more detailed analysis of the documents relevant to a smaller sample of 22."  *Id.* ¶ 2.3.6.  Mr. Brice asserts that this slice is "representative of each quarter from Quarter 1 2009 to Quarter 2 2011[,] and of each category of misstatement" that he identified.  *Id.*  His report discusses only these 22 transactions; it ignores the other 45.  Mr. Brice never offers an explanation, much less conducts any analysis, to demonstrate that the subset of 22 transactions is representative of the larger group of 67.[4]

Mr. Brice also purports to "analyze" a list of Autonomy's top contracts, which Autonomy provided to HP during due diligence.  Specifically, Mr. Brice compares his sample of software transactions to the list that HP received and notes a few "apparent omissions."  *Id.* ¶ 11.1.1.  Mr. Brice similarly purports to analyze a list of Autonomy's top customers.  His analysis entails

---

[4] The report also notes that after HP acquired Autonomy, HP reassessed 81 of the 96 transactions that Mr. Brice included in his sample.  Tellingly, HP made a different accounting judgment than Mr. Brice on 59 of the 81 transactions (almost 75% of the items that both examined).  Brice Report at 31–38.

nothing more than comparing two versions of the list and noting the differences he observes between the exhibits. *See, e.g.*, *id.* ¶ 11.2.2(a) ("[A]n amount of $18,161,217 is included in the tables in Ex 550 for IBM but IBM is not included in the Top 40 Customer list."), *id.* at tbl. 11.3 (noting that several customers on the list in exhibit 550 do not appear on the list in exhibit 540).

## B.   Legal Standard

Federal Rule of Evidence 702 provides that an expert witness may offer an opinion if (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (b) "the testimony is based on sufficient facts or data;" (c) "the testimony is the product of reliable principles and methods;" and (d) "the expert has reliably applied the principles and methods to the facts of the case."  The trial court has a "gatekeeping" obligation to ensure that all expert testimony survives scrutiny under Rule 702 before it is presented to the jury.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  The proponent of the expert testimony bears the burden of proving its admissibility.  *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

Qualifications alone cannot establish the admissibility of expert testimony.  *See United States v. Hermanek*, 289 F.3d 1076, 1093–94 (9th Cir. 2002).  The court must further determine that proffered expert testimony is both relevant and reliable.  *See Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007).

## C.   Argument

### 1.   Sixty-Seven Transactions

Mr. Hussain moves to exclude Mr. Brice's opinion that Autonomy improperly recognized revenue on 67 transactions.  The government has not disclosed the "bases and reasons" for this opinion, Fed. R. Crim. P. 16(a)(1)(G), and Mr. Brice's report does not contain any analysis of all 67 transactions, much less "sufficient facts or data" to support his opinion.  Fed. R. Evid. 702. Instead, Mr. Brice states that he formed this opinion based on his "initial review" of the documents, but he neither discloses what his "initial review" entailed, nor describes how he determined that Autonomy's accounting for each transaction was potentially problematic.  This

Court can hardly be expected to take Mr. Brice's word for it: he admits that his judgment conflicts with Autonomy's *and* HP's determinations on three-quarters of the relevant transactions.

Furthermore, Mr. Brice provides *no* explanation—much less conducts any analysis—to demonstrate that his subset of 22 transactions is somehow representative of the larger group of 67. And, there are compelling reasons to doubt Mr. Brice's claim—for example, in *half* of the relevant quarters, Mr. Brice examined only *one* transaction in detail. It is difficult to see how a sample could purport to represent a large swath of transactions given the fact-intensive nature of the relevant accounting judgment. The timing of revenue recognition, for instance, depends on the facts contained in the individual purchase orders, and frequently involves subjective determinations of fair value.

While expert testimony often applies sampling techniques to make representative claims, such opinions must be based on an established statistical methodology. Here, Mr. Brice provides no basis to support his extrapolation over the full sample. Mr. Brice should therefore be allowed to opine only about the 22 transactions he actually examined.

### 2. Top 40 Lists

Mr. Hussain also moves to exclude Mr. Brice's discussion of the lists of Autonomy's top contracts and top customers because it is not expert opinion. Mr. Brice opined on the "Top 40 Contracts" by comparing a spreadsheet of Autonomy transactions with a list HP received in due diligence, then flagging a few "apparent omissions." Brice Report, ¶ 11.1.1. As for the "Top 40 Customers," Mr. Brice eyeballed two exhibits and noted the differences. Neither of those exercises required accounting expertise, and they are not beyond the experience or ability of an ordinary person. Given that Mr. Brice's statements do not "help the trier of fact to understand the evidence," they are improper expert opinions. Fed. R. Evid. 702(a). In addition, it would be unfair to permit the government to cloak Mr. Brice's testimony with the authority of an expert because it would lend his views unmerited credibility and weight.

### D. Conclusion

This Court should exclude Mr. Brice's opinion that Autonomy improperly recognized revenue on 67 transactions because the opinion is unsupported and unreliable. The Court should

also exclude Mr. Brice's discussion of the lists of Autonomy's top contracts and customers because it is not expert opinion.

## VI.    OBJECTIONS TO GOVERNMENT WITNESSES AND EXHIBITS

Late on Friday, December 1, 2017, the government filed a list of 2,646 trial exhibits and a list of 64 witnesses.  *See* ECF Nos. 135, 136.  Mr. Hussain reserves the right to object or move *in limine* regarding the government's proposed exhibits and witnesses after the defense has had the opportunity to more fully review these lengthy disclosures.

Respectfully submitted,

Dated:  December 8, 2017                                KEKER, VAN NEST & PETERS LLP


By:    */s/ Kate E. Lazarus*
                                                             JOHN W. KEKER
                                                             JAN NIELSEN LITTLE
                                                             BROOK DOOLEY
                                                             KATE E. LAZARUS

                                                             Attorneys for Defendant
                                                             SUSHOVAN HUSSAIN

1213372