KEKER, VAN NEST & PETERS LLP
JOHN W. KEKER - # 49092
jkeker@keker.com
JAN NIELSEN LITTLE - # 100029
jlittle@keker.com
BROOK DOOLEY - # 230423
bdooley@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
SUSHOVAN HUSSAIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SUSHOVAN HUSSAIN,<br><br>　　　　Defendant. | Case No. 3:16-cr-00462-CRB<br><br>**DEFENDANT SUSHOVAN HUSSAIN'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF UNREDACTED MEMORANDA**<br><br>Date:　　February 6, 2018<br>Time:　　10:00 a.m.<br>Dept.:　　Courtroom 6 – 17th Floor<br>Judge:　　Hon. Charles R. Breyer<br><br>Date Filed: November 10, 2016<br><br>Trial Date: February 26, 2018 |

**NOTICE OF MOTION AND MOTION TO COMPEL
PRODUCTION OF UNREDACTED MEMORANDA**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD IN THIS ACTION:**

PLEASE TAKE NOTICE that on February 6, 2018 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6, 17th Floor, of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Sushovan Hussain will and hereby does move for a Court order compelling HP to produce unredacted copies of its interview summaries.

This motion is based upon this notice, the accompanying memorandum of points and authorities, the record in this case, and any argument made at the hearing.

Respectfully submitted,

Dated: January 23, 2018        KEKER, VAN NEST & PETERS LLP

By:   */s/ John W. Keker*
      JOHN W. KEKER
      JAN NIELSEN LITTLE
      BROOK DOOLEY

      Attorneys for Defendant
      SUSHOVAN HUSSAIN

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In the months before and after Hewlett-Packard's November 2012 write down, the company and its lawyers conducted well over a hundred witness interviews. Last year, the Court issued a Rule 17 subpoena that compelled the production of HP's interview summaries. In response, HP assured defense counsel that it had already produced its interview memoranda to the government, although it failed to mention that it had freely redacted some 350 paragraphs. Apparently, HP views those paragraphs—often related to key issues in this case—as islands of privilege in otherwise "non-privileged" interviews. When HP finally produced its privilege log, just two weeks ago, it failed to meet even the most basic Ninth Circuit requirements.

Through this motion, Mr. Hussain asks only that this Court enforce established Ninth Circuit law rejecting HP's "selective waiver" argument, and order HP to comply with the July 14, 2017 subpoena by producing *unredacted* copies of Morgan Lewis's and Proskauer Rose's interview summaries. At a minimum, Mr. Hussain moves this Court to treat HP's external interview summaries in the same way it treated HP's in-house work-product: by requiring HP to lodge unredacted copies with the Court and explain its privilege claims.

## II. BACKGROUND

In the summer of 2012, long before making any public allegations, Hewlett-Packard ("HP") conducted an internal investigation in an effort to "uncover" improprieties related to its botched acquisition of Autonomy. Although HP took notes of those internal interviews—the most contemporaneous accounts that exist—it has steadfastly refused to produce them to Mr. Hussain. The government, too, has rejected Mr. Hussain's requests that it ask HP for the summaries, and resisted various motions that sought to have the government review HP's documents for *Brady* material. *See generally* Dkt. 161.

After putting its "privileged" internal investigation to bed, HP took another, more controlled swing, hiring two outside law firms to conduct a "non-privileged" investigation and turn the fruits of their labor over to the United States Attorney's Office. Again, the government

played along, welcoming HP's selective production and assuring HP that the government would not argue the company had waived privilege.

As it became clear that key witnesses' stories had changed over time—often after repeated meetings with the government—Mr. Hussain moved for a Rule 17 subpoena requiring HP to produce (**1**) memoranda of the company's internal witness interviews, and (**2**) memoranda of interviews conducted by two of its outside firms, Proskauer Rose and Morgan, Lewis & Bockius LLP (collectively, the "Firms").[1]  The Court issued Mr. Hussain's proposed subpoena on July 14, 2017; it was served on HP on July 19, 2017.

When the parties conferred to discuss the subpoena, HP drew a bright line between interviews conducted by its in-house team and those conducted by the Firms:

1. HP refused to produce its ***internal*** summaries, characterizing them as "classic attorney work product, inasmuch as legal counsel prepared such material in anticipation of litigation…." Dkt. 110 at 14:2–5.  HP moved to quash the relevant request, Request No. 42.  The Court struck a compromise, ordering HP to file all internal interview notes "under seal for the Court's review," and to explain "the basis for its assertion of privilege."  Dkt. 125; *see also* Dkt. 172 (same).

2. When it came to the ***Firms'*** memoranda, HP took the position that those were ***not*** privileged.  Instead, in HP's view, those memoranda were nothing more than "documents and materials that contain factual, non-privileged, information about what a witness may have said…." Dkt. 110, 14:16–18.  As a result, HP represented to defense counsel that it had already produced them to the government.  HP made no effort to quash the relevant requests, Requests No. 43 and 44,[2] and the Court instructed the parties to "see how it plays out. You have the right to come back if something is not given." Dkt. 126 (H'rg Tr.), 31:11–32:2.

Once defense counsel received and reviewed the Firms' interview memoranda, it realized that those notes were heavily redacted—an outcome that was at odds with HP's refrain that these

---

[1] Specifically, **Request 43** required HP to produce "all summaries, notes and memoranda related to the interviews of approximately 90 individuals conducted by Proskauer Rose LLP in connection with its investigation regarding HP's acquisition of Autonomy"; and **Request 44** required it to produce "all summaries, notes and memoranda related to interviews conducted or attended by Morgan, Lewis & Bockius LLP in connection with its investigation regarding HP's acquisition of Autonomy and/or Autonomy's pre-acquisition accounting."

[2] In HP's Amended Motion to Quash, it suggested that "Mr. Hussain … has withdrawn his demand since [documents responsive to Requests No. 43 and 44] have been produced to the government." Dkt. 110 at 14 n.8; *see also* Dkt. 119 (HP Reply), 13:17–20.  That characterization is not quite right: because HP assured defense counsel that it had complied with Requests 43 and 44, neither side needed to seek relief from the Court.

1  were "factual, non-privileged summaries."  On October 16, defense counsel wrote to HP and
2  asked it to produce a privilege log explaining the bases for its redactions.  On January 12, 2018—
3  three months later—HP served a 29-page "privilege redaction log."  Although HP argues that its
4  log is "sufficient and comprehensive," that claim is fanciful.  The log identifies approximately
5  *350* redacted paragraphs by page and paragraph number—and nothing more.  Nowhere does it
6  note who attended the interviews, or substantiate the alleged attorney–client relationship, or
7  explain why some sections of the memoranda are redacted while others are not.  Instead,
8  alongside *every* entry, HP offers the same boilerplate claim: the redacted contents "reflect[ed]
9  discussion of confidential attorney-client communications relating to the Autonomy
10 investigation."  Declaration of Brook Dooley ("Dooley Decl."), Ex. E.

11     On January 16, 2018, defense counsel wrote to HP to address these deficiencies.  To date,
12 HP has not responded in any substantive way.  Instead, HP has said only that it "will reconsider"
13 its privilege log and, "if appropriate, produce an amended log and amended summaries on or
14 before January 26, 2018"—that is, *after* Mr. Hussain's deadline to file a motion ahead of the
15 upcoming pre-trial conference.

16 **III.    ARGUMENT**

17     **A.    To the extent the Firms' memoranda were ever privileged, Hewlett-Packard
18           has waived those protections and must now produce unredacted copies.**

19     For HP to withhold documents as privileged, it must prove that the materials are in fact
20 protected.  *Khasin v. Hershey Co.*, 2014 WL 690278, at *2 (N.D. Cal. Feb. 21, 2014).
21 Specifically, to invoke the attorney–client privilege, HP must show that the communications were
22 shared with a professional legal adviser, in confidence, for the purpose of obtaining or providing
23 legal advice.  *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011); *see also United States v.*
24 *Abrahams,* 905 F.2d 1276, 1283 (9th Cir. 1990).  To allow defense counsel and the Court to
25 assess those claims, HP's privilege log should—but did not—identify at least the attorneys and
26 clients involved in the communications, *Khasin*, 2014 WL 690278, at *2 (citing *In re Grand Jury*
27 *Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992)), and the general subject matter of the redacted
28 information.  *See, e.g.*, *Loop AI Labs Inc. v. Gatti*, No. 15-CV-00798-HSG(DMR), 2016 WL

3
NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF UNREDACTED MEMORANDA
Case No. 3:16-cr-00462-CRB

1229457

2908415, at *3 (N.D. Cal. May 13, 2016) ("Plaintiff's privilege log is plainly deficient. It contains no information about the titles and descriptions of the withheld documents, nor does it identify the subject matters addressed in the documents.").

That is an uphill battle, given the history of these memoranda, and one that HP has barely attempted to meet.

First, HP is fighting its own public statements.  The company has repeatedly taken the position that these summaries are *not* privileged: it produced them to the government in response to a request for "only documents and materials that contain factual, non-privileged, information about what a witness may have said…." *See, e.g.*, Dkt. 110 at 14:16–21.  In fact, as if to underscore Mr. Hussain's point about the too-close cooperation between HP and the government, HP itself has described these documents as "non-privileged witness summaries prepared by outside counsel at the request of the government…." *Id.* at 15:3–5.

Second, although HP has claimed, in boilerplate fashion, that some of these interviews are partially protected by "attorney–client privilege," it has never identified the attorneys or the supposed clients.  To the contrary, HP's interview memoranda are replete with *Upjohn* warnings, through which the Firms made clear to the witnesses that there was no such relationship.[3]  This hurdle is doubly complicated for HP, because HP has recently suggested that the privilege in fact *preceded* the interview—that is, that witnesses may have communicated "*otherwise* protected information" to the Firms during their interviews.  *See, e.g.*, Dooley Decl., Ex. F.  If that is indeed HP's position, its task is twofold: first, it must substantiate the *original* privilege claim by identifying the relevant lawyers and proving that they shared information for purposes of providing legal advice; and then, it would need to demonstrate that the witness had not *waived* that original privilege by sharing "otherwise protected information" in the context of the Firms' "non-privileged" interviews.  HP has met neither burden.

Third, if these memoranda were ever privileged, HP waived any protections by producing

---

[3] *See, e.g.*, HP-SEC-02141084 ("Counsel explained … that Proskauer Rose represented the Demand Review Committee of HP's Board, and not Mr. Lucini, which Mr. Lucini acknowledged and understood"); HP-SEC-02159955 ("Counsel explained the legal scope and purpose of the interview and explained that MLB represented HP, not Dolan….").

them *en masse* to the government.  In correspondence, HP continues to attempt to hide behind selective waiver—a charade that the government is worryingly willing to endorse.  As HP put it on January 22, "[t]he government never requested or suggested that, by producing [the Firms' witness] summaries, HPE waived any privilege over the substance of otherwise protected information…."  Dooley Decl., Ex. F.  But courts in this circuit—and almost every other circuit in the country—disagree: privilege must be construed narrowly, and the Ninth Circuit has considered and rejected the selective-waiver argument HP advances here.  *See, e.g.*, *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1128 (9th Cir. 2012) ("Given that Congress has declined broadly to adopt a new privilege to protect disclosures of attorney-client privileged materials to the government, we will not do so here."); *Richey*, 632 F.3d at 566 ("Voluntary disclosure of privileged communications constitutes waiver of the privilege for all other communications on the same subject"); *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2676424, at *3 (N.D. Cal. June 21, 2017) (same).  That HP and the government have struck an agreement is immaterial.  HP has made a calculated choice to hand its interview memoranda over to the government; in so doing, it waived any privilege claims it may once have had over them.

Fourth, even if HP's privilege claims survived waiver, they ought to be viewed skeptically.  The redactions' central theme appears to be sensitivity, not privilege.  For instance, it is difficult to understand why Léo Apotheker's recollections about Ms. Lesjak would be privileged:

> Mr. Apotheker explained that Ms. Lesjak, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  He recalled Ms. Lesjak stating that she agreed with the strategy but felt that it was too rich of a deal for HP, given

Or why Mr. Robison's recollections about HP's knowledge of Autonomy's hardware sales—a central issue in this case—would be protected by the attorney–client privilege:



5
NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF UNREDACTED MEMORANDA
Case No. 3:16-cr-00462-CRB

1229457

This is the very shell game that Mr. Hussain has identified before.  HP hired outside counsel to conduct an investigation on the government's behalf, entered into a don't-ask-don't-tell policy with the United States Attorney's Office, and then produced *most* of its investigation file while mysteriously withholding key information.  When Mr. Hussain asked the government to review these documents for *Brady*, *Giglio*, and *Jencks* material, it refused; when he asked HP to turn them over, the company's lawyers claimed "selective waiver."  Now—given the importance of these interview summaries and the waiver of any potential privilege—Mr. Hussain asks the Court to order HP to comply with Subpoena Requests 43 and 44 by producing *unredacted* copies of these memoranda.

### B. At a minimum, Hewlett-Packard should lodge copies of the Firms' interview memoranda with the Court.

At the October 6, 2017 hearing on HP's Motion to Quash, the Court ordered HP to lodge copies of all ***internal*** interview summaries, under seal, and to "set out the basis for [any] assertion of privilege." Dkt. 125.  Before defense counsel was able to propose that the Court extend that instruction to reach external Firms' summaries, too, he was cut off by a representation—from HP's lawyers—that HP had *already* produced at least some of those summaries directly to the government.[4]  *See* Dkt. 126, 31:20–24.

Since then, Mr. Hussain has repeatedly asked HP to confirm that it had lodged (or to agree that it would lodge) with the Court copies of all its interview summaries—regardless of whether they were compiled by in-house or external lawyers.  For months, HP was coy about its position, committing to "comply with Judge Breyer's … Order and statements," without taking a position on what that meant.  Dooley Decl., Ex. G.  Indeed, it was not until this week that HP made its position plain: apparently, in HP's view, nothing at the hearing or in the Court's Order required

---

[4] Despite Ms. Resley's representation that "two of those summaries" were "produced … several days ago," Mr. Hussain has never received copies.  Dkt. 126, 31:20–24.  He has also been unable to test the veracity of HP's representations because HP continually ignores his requests.  Most recently, on January 16, 2018, defense counsel asked HP's counsel to "confirm whether HP's position is that all four of these summaries are, in fact, privileged in their entirety."  In response, HP said only that "the Court did not order HP to lodge unredacted portions of the Proskauer or Morgan Lewis witness summaries with the Court."  Dooley Decl., Ex. F.

"HP to lodge unredacted portions of the Proskauer or Morgan Lewis witness summaries with the Court." *Id.* at Ex. F.

There is nothing in the spirit of the Court's instructions that would set HP's *external* memoranda apart. Indeed, if anything, HP's would-be privilege claims over those documents are more tenuous—and more likely to have been waived—than similar claims over its in-house work product. At a minimum, then, Mr. Hussain requests that the Court order HP to "file all documents in its possession responsive to request nos. [43 and 44] *ex parte* under seal for the Courts' review," and to require that it "note which documents it is claiming are privileged" and "set out the basis for its assertion of privilege." *See generally* Dkt. 125 (Oct. 10, 2017 Order).

## IV.   CONCLUSION

For the foregoing reasons, Mr. Hussain requests that the Court find HP has waived privilege and order it to provide defense counsel with *unredacted* copies of all documents responsive to Subpoena Requests 43 and 44; or, in the alternative, that the Court order HP to "file all documents in its possession responsive to request nos. [43 and 44] *ex parte* under seal for the Courts' review," and that it "note which documents it is claiming are privileged" and "set out the basis for its assertion of privilege."

Respectfully submitted,

Dated:  January 23, 2018                           KEKER, VAN NEST & PETERS LLP

By:   */s/ John W. Keker*
      JOHN W. KEKER
      JAN NIELSEN LITTLE
      BROOK DOOLEY

      Attorneys for Defendant
      SUSHOVAN HUSSAIN