1
2
3
4
5

IN THE UNITED STATES DISTRICT COURT

6

FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    UNITED STATES OF AMERICA,          Case No.  16-cr-00462-CRB-1

9            Plaintiff,

10        v.                             **ORDER DENYING HP'S EX PARTE
                                         MOTION TO WITHHOLD
11    SUSHOVAN TAREQUE HUSSAIN,          ATTORNEY INTERVIEW NOTES**

12            Defendant.

13          Hewlett-Packard ("HP") is not a party in this case.  However, as the purported

14   victim of the wire and securities fraud allegedly perpetrated by the Defendant, it has

15   loomed large throughout this prosecution.  The Defendant, Sushovan Hussain, has

16   repeatedly argued that HP should be subjected to the same disclosure obligations as the

17   government, and has served several subpoenas on HP pursuant to Federal Rule of Criminal

18   Procedure 17.  In ruling on one of Hussain's Rule 17 requests, for notes of witness

19   interviews prepared by HP attorneys, the Court ordered HP to submit the requested notes

20   for in camera review so that it could assess HP's claims of attorney-client privilege and

21   work-product protection.  Having reviewed the submitted documents, the Court finds that

22   HP has waived its work-product objections by disclosing similar documents to the

23   government.  Accordingly, the Court orders HP to produce the requested documents, with

24   necessary redactions to protect both attorney impressions and opinions and materials over

25   which HP claims attorney-client privilege, as soon as possible.  Once HP has produced

26   these materials, the Court will hear further argument, if necessary, on any additional

27   redactions HP has chosen to make.

28

United States District Court
Northern District of California

## I.      BACKGROUND

HP's attorneys have conducted a great many interviews in this case.  HP has conducted internal investigations of alleged fraud in connection with its acquisition of the company for which Defendant worked, Autonomy; has interviewed employees and others to defend itself from derivative lawsuits; has conducted interviews in preparation with its own civil litigation against Autonomy; and has conducted other interviews at the request of the United States Attorney's Office in connection with that office's criminal prosecution of Hussain.  The government specifically requested only interviews prepared by HP attorneys that were not protected as attorney work product, protected under the attorney-client privilege, or shielded by any other privilege, and made it clear that it was not asking HP to waive any privilege.

HP turned over to the government interviews of HP employees in late 2013 that were conducted by outside counsel.  Some of these interviews, conducted by the law firm Proskauer Rose, came at the request of HP's Demand Review Committee in its deliberations over how to respond to a shareholder demand.  HP Rule 17 Mot. (dkt. 110) at 14.  Others, conducted by the law firm Morgan Lewis & Bockius, came at the request of the government.  Id.

HP has withheld a number of other interviews, however.  These includes interviews of HP Autonomy personnel conducted by in-house counsel in 2012, as well as interviews conducted by several law firms in connection with a number of different litigation matters since 2013.  HP argues that all the interviews it has not turned over are protected in their entirety by as attorney work product, and that some additional interviews are protected in whole or in part by the attorney-client privilege.


## II.      DISCUSSION

HP makes three objections to Hussain's requests for the notes of these interviews.  First, it argues that these materials will only be used for impeachment purposes, and notes that impeachment materials are generally not discoverable under Rule 17.  Second, it

argues that the statements fall under Rule 17(h)'s exception for witness statements.  Third, it argues that the materials are attorney work product because they were prepared in advance of litigation, and that some of the materials are also protected by attorney-client privilege.  The Court takes each of these arguments in turn.

### A.  Rule 17(c) Discoverability

HP argues that the materials are not discoverable under Rule 17(c) because their only use is for impeachment.  It relies on the Supreme Court's statement in United States v. Nixon that "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."  418 U.S. 683, 701 (1974).  However, this Court did not require the materials to be produced in advance of trial—it ordered them produced for in camera review during trial.  While the Nixon Court's statement is somewhat opaque, the Court was likely referring to the Jencks Act, passed in 1957, which requires production of witness statements by the government only after the witness has testified.  See 18 U.S.C. § 3500(b).  This interpretation of Nixon is consistent with the holding of United States v. Fields, in which the Ninth Circuit held that the district court had abused its discretion by requiring production of impeachment materials under Rule 17(c) prior to trial.  See 663 F.2d 880, 881 (9th Cir. 1981).  Accordingly, it was proper to require HP to produce potential witness statements for in camera review during trial.

### B.  Rule 17(h) Exception

HP next argues that Rule 17(h) precludes the materials' production.  Rule 17(h) states:

> No party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement.

Fed. R. Crim. P. 17(h).  At least one Court has interpreted Rule 17(h) to mean that witness statements may not be compelled from third parties under Rule 17.  See United States v. Skylar Ariel Phoenix, No. 5:14-CR-00318-LHK, 2015 WL 6094882, at *3 (N.D. Cal. Oct. 16, 2015).  However, the better view is that Rule 17(h) only applies to statements in the possession of the government.  See United States v. Young, No. 03-20400 BV, 2004 WL

3

784840, at *2 (W.D. Tenn. Mar. 4, 2004).  Rule 17(h) was added in the 1979 amendments to the Criminal Rules, with the advisory committee noting that the addition was "necessary in light of proposed rule 26.2, which deals with the obtaining of statements of government and defense witnesses."  The advisory committee's notes reflect an intention to make the rules coherent, not to change them.  That is, they do not reflect an intention to make third-party witness statements undiscoverable, as HP would have it.  Accordingly, this argument fails.

### C.    Work-Product Protection

HP's final argument is that the notes are protected by the work-product doctrine. HP argues that all but the notes of interviews conducted by Morgan Lewis and Proskauer Rose are work product.  However, it is difficult to see how the notes HP has disclosed to the government, particularly those prepared by Proskauer in response to the shareholder demand, are not work product.  For instance, a number of courts have held that "materials created by a committee investigating corporate wrongdoing in response to shareholder demands are entitled to work-product protection."  <u>Arfa v. Zionist Org. of Am.</u>, No. CV 13-2942 ABC SS, 2014 WL 815496, at *3 (C.D. Cal. Mar. 3, 2014).  HP puts forth no reason why that is not the case here, as well.  The interviews here would particularly seem to warrant work-product protection given that HP has been involved in litigation on a number of fronts.  It is hard to believe—indeed, it is inconceivable—that HP's lawyers would ignore material emerging from the investigation of the shareholder demand that supported their case in some other Autonomy-related litigation.  When litigation appears highly likely, there is at least a rebuttable presumption that attorney work on the subject matter of the litigation is protected attorney work-product.  HP has not rebutted that presumption here.  HP does not argue, for instance, that it screened its other attorneys from viewing the material contained in the Proskauer and Morgan Lewis documents.

Indeed, HP's redaction of <u>some</u> of the interviews by Proskauer and Morgan Lewis as attorney work product puts the lie to its claim that the Morgan Lewis and Proskauer

1    interviews were not attorney work product as a whole.  Meanwhile, its argument that the

2    2012 interviews by in-house lawyers were prepared in anticipation of litigation but that its

3    2013 interviews by outside counsel were not is perplexing.  HP appears to be using the

4    work-product doctrine as a switch that allows it to turn over to the government material

5    that advances its interests, while withholding material that does not.  The possibility of this

6    type of selective disclosure is exactly why specific waivers of the protection act as

7    complete waivers with respect to "all other communications on the same subject."

8    Hernandez v. Tanninen, 604 F.3d 1095, 1100 (9th Cir. 2010).  Having different law firms

9    conduct interviews for different stated purposes does not get around the waiver rule.

10           Accordingly, HP has waived its claim of work-product protection over factual

11   summaries prepared by attorneys in relation to the investigation of the alleged Autonomy

12   fraud, with one possible caveat: the attorney notes created by HP in-house counsel in 2012

13   arguably are not attorney work product, because litigation was not necessarily likely when

14   those notes were prepared.  It is not clear whether those notes were prepared "because of

15   anticipated litigation," or for purposes related to an internal investigation.  See United

16   States v. Richey, 632 F.3d 559, 568 (9th Cir. 2011).  In any event, the Court need not

17   decide the issue, because the result is the same either way: if the documents are work

18   product, the privilege is waived; if they are not work product, then HP has no reason for

19   not disclosing them.

20

21   **III.    CONCLUSION**

22           HP is **ORDERED** to produce summaries of witness interviews requested by

23   Hussain pursuant to Rule 17(c) that it has not already provided to Hussain for witnesses

24   that have been included by the government in the list of witnesses it may call at trial.  The

25   parties have agreed that HP should produce these documents as expeditiously as possible,

26   in the order in which the government intends to call witnesses (dkt. 246).  By the end of

27   the day on Thursday, March 1, it shall file with the Court a list of the documents it has

28   produced or will produce to Hussain

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1    The Court must now qualify this order.  First, voluntary disclosure of material

2    protected by the work-product doctrine only waives "'factual' or 'non-opinion' work

3    product concerning the same subject matter as the disclosed work product."  In re EchoStar

4    Commc'ns Corp., 448 F.3d 1294, 1302 (Fed. Cir. 2006).  It does not waive attorneys'

5    opinions or impressions.  HP may therefore redact the relevant documents for this material

6    before turning them over to defense counsel.

7    In addition, HP has asserted attorney-client privilege over some of the documents

8    requested by Hussain, as well.  The Court has not reviewed these claims, and makes no

9    finding as to them.  Accordingly, HP may make redactions to identify material protected

10   by the attorney-client privilege, subject to any objections by Hussain and further rulings of

11   this Court.  Of course, where HP has not specifically claimed attorney-client privilege in

12   documents already turned over to the Court, it has waived the argument that the protection

13   inheres with respect to those documents.  With respect to the Pricewaterhouse interviews,

14   withholding those interviews is no longer necessary to protect attorney work product

15   (because work-product protection has been waived), but may be necessary in select cases

16   to protect attorney-client privilege.  HP must turn over those interviews with necessary

17   redactions, subject again to further ruling by the Court.

18   Finally, HP need not produce interview summaries prepared by Travers Smith LLP.

19   Hussain withdrew his request for these materials at the Court's hearing on Feb. 27, 2018.

20   **IT IS SO ORDERED.**

21   Dated: Feb. 28, 2018

CHARLES R. BREYER
United States District Judge