1  KEKER, VAN NEST & PETERS LLP
   JOHN W. KEKER - # 49092
2  jkeker@keker.com
   JAN NIELSEN LITTLE - # 100029
3  jlittle@keker.com
   BROOK DOOLEY - # 230423
4  bdooley@keker.com
   633 Battery Street
5  San Francisco, CA 94111-1809
   Telephone:    415 391 5400
6  Facsimile:    415 397 7188

7  Attorneys for Defendant
   SUSHOVAN HUSSAIN

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12 | UNITED STATES OF AMERICA, | Case No. 3:16-cr-00462-CRB |
|---|---|
|        Plaintiff, | **DEFENDANT SUSHOVAN HUSSAIN'S RENEWED NOTICE OF MOTION AND MOTION FOR JUDGMENT OF ACQUITTAL UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 29(c)** |
|    v. | |
| SUSHOVAN HUSSAIN, | |
|        Defendant. | Judge:      Hon. Charles R. Breyer |
| | Date Filed:  November 10, 2016 |

1283224

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ...........................................................................................................1

II.    ARGUMENT ................................................................................................................3

       A.     The evidence was insufficient to sustain a conviction for wire-fraud
              conspiracy. ........................................................................................................4

       B.     The evidence was insufficient for wire-fraud counts two through fifteen. ..............9

       C.     The evidence was insufficient for the sixteenth count for securities fraud.............9

III.   CONCLUSION.............................................................................................................10

1283224

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Eller v. EquiTrust Life Ins. Co.*
778 F.3d 1089 (9th Cir. 2015) ................................................................................. 8

*Grunewald v. United States*
353 U.S. 391 (1957) ...................................................................................... 1, 2

*Kotteakos v. United States*
328 U.S. 750 (1946) ........................................................................................... 1

*Krulewitch v. United States*
336 U.S. 440 (1949) ........................................................................................... 3

*Neder v. United States*
527 U.S. 1 (1999) .............................................................................................. 4

*Superior Oil Co. v. State of Mississippi ex rel. Knox*
280 U.S. 390 (1930) ........................................................................................... 2

*United States v. Coscia*
866 F.3d 782 (7th Cir. 2017) ............................................................................... 9

*United States v. Hanson*
41 F.3d 580 (10th Cir. 1994) ............................................................................... 6

*United States v. Hussain*
2017 WL 4865562 (N.D. Cal. Oct. 27, 2017) .......................................... *passim*

*United States v. Jinian*
725 F.3d 954 (9th Cir. 2013) ........................................................................... 4, 9

*United States v. Kamer*
781 F.2d 1380 (9th Cir. 1986) ......................................................................... 4, 8

*United States v. Katakis*
800 F.3d 1017 (9th Cir. 2015) ....................................................................... 3, 10

*United States v. Krasovich*
819 F.2d 253 (9th Cir. 1987) ........................................................................... 5, 9

*United States v. Lapier*
796 F.3d 1090 (9th Cir. 2015) ................................................................. 3, 4, 5, 9

*United States v. Lothian*
976 F.2d 1257 (9th Cir. 1992) ............................................................................. 9

*United States v. Manion*
339 F.3d 1153 (9th Cir. 2003) ............................................................................. 9

1283224

*United States v. Martin Linen Supply Co.*
    430 U.S. 564 (1977) ................................................................................................ 3

*United States v. McDonald*
    576 F.2d 1350 (9th Cir. 1978) ............................................................................. 8

*United States v. Melchor-Lopez*
    627 F.2d 886 (9th Cir. 1980) ......................................................... 4, 5, 6, 7, 9

*United States v. Milwitt*
    475 F.3d 1150 (9th Cir. 2007) ....................................................................... 4, 7, 8

*United States v. Minarik*
    875 F.2d 1186 (6th Cir. 1989) ............................................................................. 3

*United States v. Peoni*
    100 F.2d 401 (2d Cir. 1938) ................................................................................. 5

*United States v. Piepgrass*
    425 F.2d 194 (9th Cir. 1970) ........................................................................... 2, 6

*Webb v. Solarcity Corp.*
    884 F.3d 844 (9th Cir. 2018) ....................................................................... 2, 5, 7

*Windsor v. United States*
    384 F.2d 535 (9th Cir. 1967) ........................................................................... 6, 7

**Statutes**

18 U.S.C. § 1348 ........................................................................................................ 9

**Rules**

Fed. R. Crim. P. 29 ............................................................................................. 3, 10

**Other Authority**

John C. Coffee, Jr., *Does "Unlawful" Mean "Criminal"?: Reflections on the Disappearing Tort/Crime Distinction in American Law*, 71 B.U. L. Rev. 193, 207 (1991) ............................................................................................................... 2

1283224

1

**NOTICE OF MOTION AND MOTION**

2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD IN THIS ACTION:**

3      PLEASE TAKE NOTICE that on June 27, 2018, at 1:30 p.m., or as soon thereafter as

4    counsel may be heard, in Courtroom 6, 17th Floor of the United States District Court for the

5    Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant

6    Sushovan Hussain will and hereby does move for judgment of acquittal under Federal Rule of

7    Criminal Procedure 29(c).

8      This motion is based upon the following points and authorities, oral argument, and the

9    pleadings and exhibits on file with the Court.

10                                          Respectfully submitted,

11   Dated:  May 23, 2018                      KEKER, VAN NEST & PETERS LLP

12

13                                 By:    /s/ John W. Keker
                                          JOHN W. KEKER
14                                        JAN NIELSEN LITTLE
                                          BROOK DOOLEY
15
                                          Attorneys for Defendant
16                                        SUSHOVAN HUSSAIN

17

18

19

20

21

22

23

24

25

26

27

28

1283224

## I.      INTRODUCTION

The government indicted defendant Sushovan Hussain for allegedly devising a single overarching conspiracy to commit wire fraud in connection with the purchase of Autonomy Corporation plc ("Autonomy") by Hewlett Packard ("HP").  At trial, however, the government lumped together a mishmash of different transactions with only occasional and tangential connections to Hussain—or, for that matter, HP—with *no* proof, certainly not beyond a reasonable doubt, that Hussain devised a sprawling criminal conspiracy encompassing all of the disparate alleged offenses.  The government's witnesses repeatedly testified that they did not intend or agree to do anything wrong, much less illegal, and the evidence was insufficient to prove beyond a reasonable doubt that Hussain himself intended and agreed to commit wire fraud.

The government's failure of proof was especially egregious given that it asked this Court to give the jury a *Pinkerton* charge, allowing them to convict Hussain for the alleged offenses of purported co-conspirators whose own testimony disproved the existence of the overarching conspiracy alleged in the indictment.  Amorphous conspiracy charges violate the principle that criminal liability must be "individual and personal, even as respects conspiracies.  It is not a matter of mass application. . . .  That way lies the drift toward totalitarian institutions."  *Kotteakos v. United States*, 328 U.S. 750, 772-73 (1946).  If that seems hyperbolic, consider that the government, in effect, performed *ex post facto* due diligence that HP itself failed to conduct, and argued that *any* alleged nondisclosure or misrepresentation by *anyone* at Autonomy of *anything* that *might* have mattered to HP is a *criminal* offense for which *Hussain* can be singled out for prosecution and conviction, even though he had no duty of disclosure to HP, made no intentional misrepresentations, and certainly did not devise any grand conspiracy to commit wire fraud.  The Court should reject this expansion of "the already pervasive and wide-sweeping nets of conspiracy prosecutions."  *Grunewald v. United States*, 353 U.S. 391, 404 (1957).

Indeed, the government prosecuted this like a drug or mafia case involving obviously criminal conduct, when instead it involved *ordinary business activities* of a British company and citizen, as the indictment makes clear.  The alleged "objectives of the scheme to defraud" were:

(a) to ensure that Autonomy reported that it had met or exceeded projected quarterly results for, among other things, revenue, gross margin, net income, and

1

> earnings per share, (b) to maintain and increase defendant's position within the company, and to enrich himself and others through bonuses, salaries, and options, and (c) to artificially increase and maintain the share price of Autonomy's securities to, among other things, make Autonomy attractive to potential purchasers.

Superseding Indictment ¶ 20.  The only word in that entire list of allegedly criminal objectives that even hints at anything wrongful is "artificially," *id.*, which is a slender reed on which to base a criminal prosecution.  As the Ninth Circuit remarked just last month, *every* company "wants to maximize its apparent profitability" and "maintain a high share price."  *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018).  There is nothing wrong with seeking to meet or exceed quarterly expectations and report the same—those are laudable goals of every publicly-traded company.  There is nothing wrong with striving to gain the respect of one's peers and make money—those are universal aspirations.  And there is nothing wrong with increasing and maintaining shareholder value—those, again, are goals of every company with shareholders, and it would be a breach of fiduciary duty *not* to zealously pursue those goals, even up to the boundaries of the law.  The "very meaning of a line in the law is that you intentionally may go as close to it as you can if you do not pass it," *Superior Oil Co. v. State of Mississippi ex rel. Knox*, 280 U.S. 390, 395-96 (1930), and even if others may have intended at some point to go not only close to the line, as is allowed, but willfully across it, the evidence was insufficient to prove beyond a reasonable doubt that Hussain himself intended to cross the line between business and crime.

The Court "must be ever mindful that the requisite mental state in a prosecution for fraud is a specific intent to defraud and not merely knowledge of shadowy dealings."  *United States v. Piepgrass*, 425 F.2d 194, 199 (9th Cir. 1970).  Even if HP could, in a civil suit, hold Hussain to "'the punctilio of an honor the most sensitive'"—which it could not, because Hussain was not an HP fiduciary when HP bought Autonomy—"precisely because such a standard can neither be realized fully nor even be defined with specificity in advance, it should not be criminalized." John C. Coffee, Jr., *Does "Unlawful" Mean "Criminal"?: Reflections on the Disappearing Tort/Crime Distinction in American Law*, 71 B.U. L. Rev. 193, 207 (1991) (quoting *Meinhard v. Salmon*, 249 N.Y. 464, 453, 164 N.E. 545, 546 (1928) (Cardozo, J.)).  Neither the law nor the

1    evidence supported the government's conspiracy and wire-fraud charges.

2         The evidence also did not support the securities-fraud count, which the government added

3    to the superseding indictment as an afterthought.  As this Court held in its order denying

4    Hussain's motion to dismiss, the government had to prove, among other things, that "Hussain

5    *caused* HP to repeat his representations about the state of Autonomy's finances," and "*knew* that

6    he was causing HP to do so."  *United States v. Hussain*, 2017 WL 4865562, at *9 (N.D. Cal. Oct.

7    27, 2017) (emphases added).[1]  But the government offered no such evidence *at all*, and thus

8    cannot possibly sustain a conviction for securities fraud.

9         As further explained below, the Court should acquit Hussain of all charges under Rule 29.

10                        **II.    ARGUMENT**

11        After "the jury has returned a guilty verdict, the court may set aside the verdict and enter

12   an acquittal."  Fed. R. Crim. P. 29(c)(2).  The defendant must be acquitted where, as here, the

13   government fails to prove an element of the alleged crime, or offers "mere speculation dressed up

14   in the guise of evidence."  *United States v. Katakis*, 800 F.3d 1017, 1023-24 (9th Cir. 2015)

15   (citation omitted).  This Court's unreviewable discretion in "filtering out deficient prosecutions,"

16   *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 575 (1977), safeguards against

17   impermissibly vague conspiracy charges.  The crime of conspiracy is already "so vague that it

18   almost defies definition.  Despite certain elementary and essential elements, it also, chameleon-

19   like, takes on a special coloration from each of the many independent offenses on which it may be

20   overlaid."  *Krulewitch v. United States*, 336 U.S. 440, 446-47 (1949) (Jackson, J, concurring)

21   (footnotes omitted).  And where, as here, the underlying offense is itself a conspiracy—a "scheme

22   to defraud," a conspiracy to conspire—the chameleon has no definite background and can too

23   easily look different to different jurors, violating the requirement that they must "*unanimously*

24   agree that the defendant is guilty of participating in a *particular* conspiracy . . . to pursue a

25   *particular criminal goal*."  *United States v. Lapier*, 796 F.3d 1090, 1096 (9th Cir. 2015)

26   (emphases added).  Thus, "prosecutors and courts are required to determine and acknowledge

27   exactly what the alleged crime *is*.  They may not allow the facts to define the crime through

28

---

[1] Hussain preserves, without repeating here, his arguments for dismissal.  *See* Dkt. Nos. 113, 118.

1  hindsight after the case is over." *United States v. Minarik*, 875 F.2d 1186, 1196 (6th Cir. 1989)

2  (emphasis in original).  The prosecution failed to carry its legal and evidentiary burdens.

### A.   The evidence was insufficient to sustain a conviction for wire-fraud conspiracy.

5  The primary count was for conspiracy to commit wire fraud.  The essential elements of

6  conspiracy are "an agreement to accomplish an illegal objective coupled with one or more overt

7  acts in furtherance of the illegal purpose and the requisite intent necessary to commit the

8  underlying substantive offense."  *United States v. Melchor-Lopez*, 627 F.2d 886, 890 (9th Cir.

9  1980) (citation omitted).  Wire fraud, in turn, "has three elements: (1) a scheme to defraud, (2) the

10  use of wire, radio, or the television in furtherance of the scheme, and (3) intent to defraud."

11  *Hussain*, 2017 WL 4865562, at *1 (citing *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir.

12  2013)).  The "scheme to defraud" element further requires proof of *materiality—i.e.*,

13  misrepresentations that had "a natural tendency to influence, or [were] capable of influencing, the

14  decision of the decisionmaking body to which [they were] addressed."  *Neder v. United States*,

15  527 U.S. 1, 16 (1999) (citation omitted).  Another crucial "aspect of the 'scheme to defraud'

16  requirement" is *specific* intent: "there is no fraudulent scheme without specific intent."  *Jinian*,

17  725 F.3d at 960 (citation omitted).  "The specific intent to deceive or defraud element of the mail

18  and wire fraud crimes requires the prosecution to prove that the defendant intended to defraud an

19  identifiable individual."  *United States v. Milwitt*, 475 F.3d 1150, 1156 (9th Cir. 2007).  It is

20  especially important for the government to prove specific intent with regard to the alleged victim

21  where, as here, the government relies on alleged nondisclosures, because "nondisclosure does not

22  rise to criminal proportions" as wire fraud unless the government proves the defendant had a duty

23  of disclosure to the alleged victim.  *United States v. Kamer*, 781 F.2d 1380, 1386 (9th Cir. 1986).

24  Because the essence of an alleged conspiracy is the agreement, the government must

25  prove, consistent with the indictment, exactly what the agreement was.  Where, as here, the

26  indictment charges a single conspiracy, a conviction cannot be based on what amounts to either

27  no conspiracy at all or "multiple conspiracies instead of the single charged conspiracy."  *Lapier*,

28  796 F.3d at 1097-98.  "To show a conspiracy, the circumstances must lead to an inference that

1283224

some form of overall agreement exists, and that each defendant knew or had reason to know of the scope of the conspiracy and reason to believe that their own benefits were dependent upon the success of the entire venture." *Id.* at 1101 (quotation marks and ellipses omitted).  There cannot be a conviction for conspiracy where, as here, "there is no evidence of any common purpose of a single enterprise." *Id.* (quotation marks omitted).  Evidence that is consistent with a common *legal* enterprise certainly cannot support a conviction.  A common objective to "maintain a high share price," for example, does not make a criminal conspiracy.  *See Webb*, 884 F.3d at 856.

A shared *illegal* objective "is an essential element of any conspiracy conviction," and the government must prove not only "knowledge of the illegal objective, it must also prove an agreement with a co-conspirator to pursue that objective as a common one."  *United States v. Krasovich*, 819 F.2d 253, 255 (9th Cir. 1987).  For example, "a conviction has been held improper where one alleged conspirator, in enlisting another, told him the operation's objective was tax evasion when in fact it was cashing fraudulent checks," because although "both alleged co-conspirators agreed to commit offenses against the United States, they had not agreed on the same offense." *Id.* (citing *United States v. Rosenblatt*, 554 F.2d 36, 38-40 (2d Cir. 1977)).  As Judge Learned Hand famously observed of prosecutors long ago, and as is equally true here:

> At times it seemed to be supposed that, once some kind of criminal concert is established, all parties are liable for everything anyone of the original participants does, and even for what those do who join later.  Nothing could be more untrue.  Nobody is liable in conspiracy except for the fair import of the concerted purpose or agreement *as he understands it*; if later comers change that, he is not liable for the change; his liability is limited to the common purposes while he remains in it.  The confusion is perhaps due to the fact that everything done by the conspirators— including the declarations of later entrants—is competent evidence against all, so far as it may fairly be thought to be in execution of the concert to which the accused is privy, though that doctrine too is often abused.

*United States v. Peoni*, 100 F.2d 401, 403 (2d Cir. 1938) (emphasis added).

Likewise, the Ninth Circuit has warned that courts must not "overemphasize a rule of evidence (that an agreement may be inferred from surrounding circumstances) at the expense of a rule of law (that proof of an agreement is required for the crime of conspiracy)."  *Melchor-Lopez*, 627 F.2d at 891 (citation omitted).  In *Melchor-Lopez*, the alleged co-conspirators had lengthy discussions about importing heroin, but the government did not offer sufficient evidence of "a

5

mutual understanding to accomplish a specific objective or of an intention to be bound by any agreement." *Id.* at 889-90.  The government attempted to make up for its failure of proof by relying on the principle that the agreement need not be explicit, and may be inferred from circumstantial evidence, but "this evidentiary principle does not reduce the government's burden of proof," and "recitation of this rule" cannot "relieve the government of its burden to prove every element of the crime beyond a reasonable doubt." *Id.* at 891-92.  There "can be no conviction for guilt by association, and it is clear that mere association with members of a conspiracy," or even "knowledge, approval of, or acquiescence in the object or purpose of the conspiracy, without an intention and agreement to accomplish a specific illegal objective, is not sufficient to make one a conspirator." *Id.* at 891.  It is particularly imperative for courts to prohibit "an unwarranted vagueness of proof as to this most basic element of conspiracy" where, as here, the government denies that "proof of an overt act" is required.  *Id.* at 892; *see* Joint Submission Re Jury Instructions (Dkt. No. 184) at 57.

The principles of *Melchor-Lopez*—a drug case—apply *a fortiori* here, where the bottom line is that HP made "what ultimately turned out to be a poor investment." *United States v. Hanson*, 41 F.3d 580, 582 (10th Cir. 1994).  That "simply does not constitute circumstantial proof of a conspiracy. . . .  Business failure may not automatically be equated with a conspiracy to defraud." *Id.*  As the Ninth Circuit held in *Windsor v. United States*, 384 F.2d 535 (9th Cir. 1967), even "an unsavory, high-pressure, fly-by-night scheme" does not rise from an "exercise in *caveat emptor*" to a crime, absent non-speculative proof of the defendant's "knowing participation in a scheme to defraud," which "cannot be based on so-called 'constructive' knowledge because of facts known to others with whom appellant was involved in this scheme." *Id.* at 535-37.  Where, as here, the defendant's own "proved participation is as consistent with lack of knowledge as it is with knowledge," the government "has failed to meet its burden of establishing the criminal intent essential to the crime of mail fraud." *Id.* at 537.  Likewise, evidence that the defendant "could have been aware that funds were being interchanged between the companies and individuals with a great deal of freedom," and that this shell game was "operating as a deceit on the investors," is insufficient to prove that he "had, beyond doubt, the

requisite specific intent to defraud because the logical relationship between what he *could have* known and a specific intent has no rational basis. The inferences are simply too tenuous to permit the jury to draw that conclusion." *Piepgrass*, 425 F.2d at 199-200 (emphasis in original).

Here, the government contended that this case was not only about HP's buyer's remorse, but an overarching conspiracy to "artificially" recognize revenue, such that every alleged instance of improperly-recognized revenue, and every alleged instance of less than full disclosure to Autonomy's shareholders, is purported proof of the alleged illegal agreement. But this is no better than the argument the Ninth Circuit rejected in *Melchor-Lopez*. Instead of proving the agreement alleged in the indictment, the government presented every alleged irregularity it could find in Autonomy's books at HP's behest, and sought to bind them all together after the fact, not with any proof of an overarching agreement—there is none—but with bare inference. As in *Melchor-Lopez*, however, "no mere suspicion or surmise is permitted to replace the essential analysis of the qualitative nature of the acts in question." 627 F.2d at 891. The nature of the acts in question here was "to maximize [Autonomy's] apparent profitability" and "maintain a high share price," which is not a crime. *Webb*, 884 F.3d at 856. Even assuming that the government offered evidence that alleged co-conspirators intended to accomplish these otherwise legitimate goals "artificially," the government had no evidence that *Hussain* intended and knowingly agreed to commit wire fraud. On the contrary, Hussain's *own* "proved participation is as consistent with lack of knowledge as it is with knowledge." *Windsor*, 384 F.2d at 537.

Furthermore, the government sought to prove a single overarching scheme to defraud by conflating alleged nondisclosures to *Autonomy's shareholders* with alleged nondisclosures to *HP*, which was *adverse to Autonomy's shareholders and Hussain* in the arm's-length transaction at the heart of this case. As the Ninth Circuit held in *Milwitt*, however, the "specific intent to deceive or defraud element of the mail and wire fraud crimes requires the prosecution to prove that the defendant intended to defraud an identifiable individual." 475 F.3d at 1156. Defendant Milwitt misrepresented himself as an attorney and collected fees from tenants to defend their unlawful detainer actions, advising them that they could withhold rent from their landlords and use it to pay him. *See id.* at 1152-53. Milwitt then filed *pro per* bankruptcy petitions, thereby

suspending the landlords' collections from the tenants.  The government indicted Milwitt for bankruptcy fraud, alleging a scheme to defraud the landlords.  The Ninth Circuit held that because the bankruptcy fraud statute is based on the mail and wire fraud statutes, it likewise requires specific intent to "defraud an identifiable individual," *id.* at 1156, and that the government's evidence was insufficient because it conflated a purported scheme to defraud the tenants with one to defraud the landlords.  The government relied on the notion that intent may be established by circumstantial evidence, and argued that "the landlords were the indirect victims of the overall scheme to defraud, while the tenants were the primary mechanisms of the fraud." *Id.* at 1158 (quotation marks omitted).  But the Ninth Circuit reversed the conviction because "even the circumstantial evidence presented at trial was insufficient to prove that Milwitt had a specific intent to defraud the landlords rather than the tenants." *Id.* at 1159.

Similarly here, purported evidence of nondisclosures to *Autonomy* shareholders relating to revenue recognition does not establish the specific intent necessary to sustain a conviction for a criminal scheme to defraud *HP*.  Hussain had no duty of disclosure to HP.  *See, e.g., Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092-93 (9th Cir. 2015) (affirming summary judgment on wire-fraud claims because "a seller generally has no duty to disclose internal pricing policies or its method for valuing what it sells").  Absent such a duty, "nondisclosure does not rise to criminal proportions," and "failure to disclose, therefore," cannot support the inference that the defendant "'had, beyond doubt, the specific intent to defraud.'" *Kamer*, 781 F.2d at 1386 (quoting *United States v. McDonald*, 576 F.2d 1350, 1359 (9th Cir. 1978)).

*McDonald* is also instructive.  Defendant McDonald's alleged co-conspirators "wrote spurious contracts of sale to persons who never intended to make payments on them," and McDonald sold those spurious contracts to investors.  576 F.2d at 1353.  After McDonald stopped selling such contracts, he demanded bona fide contracts to replace spurious ones he had purchased himself, which "may have been unfair to his former customers," but "could not alone establish fraudulent intent at the time he sold them." *Id.* at 1359.  "McDonald may have in some respects violated a fiduciary duty to his investment clients, but that in itself would not demonstrate the specific intent necessary to sustain a conviction." *Id.* n.14.  Likewise, Hussain's

1283224

alleged breach of a fiduciary duty of disclosure to Autonomy's shareholders cannot, in itself, establish criminal intent, *see id.*, and *a fortiori* cannot establish the specific intent to defraud *HP*, *see Milwitt*, 475 F.3d at 1156-59.

Instead of proof that Hussain specifically intended to defraud HP and devised and entered into an overarching agreement to do so as the "common purpose of a single enterprise," *Lapier*, 796 F.3d at 1101, the government offered "mere suspicion or surmise," and introduced "an unwarranted vagueness of proof as to this most basic element of conspiracy," *Melchor-Lopez*, 627 F.2d at 891-92.  The Court should acquit Hussain of conspiracy to commit wire fraud.

### B.      The evidence was insufficient for wire-fraud counts two through fifteen.

Counts two through fifteen were for specific alleged acts of wire fraud, but these also fail for the same reasons as the conspiracy count.  "Because an essential element of these offenses is a fraudulent scheme, mail and wire fraud are treated like conspiracy in several respects."  *United States v. Lothian*, 976 F.2d 1257, 1262 (9th Cir. 1992).  In particular, only "*knowing participants in the scheme* are legally liable for their co-schemers' use of the mails or wires."  *Id.* at 1263 (emphasis added) (quotation marks omitted); *see also*, *e.g.*, *United States v. Manion*, 339 F.3d 1153, 1156 (9th Cir. 2003) (distinguishing cases where, unlike here, "an individual is charged with liability *only for his or her own substantive acts* of mail or wire fraud") (emphasis added).  Because the government sought to hold Hussain liable for alleged actions of purported co-conspirators, it had to prove that Hussain knowingly participated in the same fraudulent scheme as those co-conspirators, pursuing a common illegal objective.  *See*, *e.g.*, *id.*; *Lothian*, 976 F.2d at 1262; *Krasovich*, 819 F.2d at 255.  For the reasons already discussed, the evidence was insufficient to support the government's theory on any of the wire-fraud counts, so the Court should acquit Hussain on counts two through fifteen, along with the first count.

### C.      The evidence was insufficient for the sixteenth count for securities fraud.

Finally, the Court should acquit Hussain of the sixteenth count for securities fraud.  The government had to prove beyond a reasonable doubt that Hussain (1) knowingly executed or attempted to execute a scheme to defraud; (2) made material false statements as part of that scheme; (3) with the specific intent to defraud; (4) in connection with HP securities.  *See* 18

9

1283224

U.S.C. § 1348; *Jinian*, 725 F.3d at 960; *United States v. Coscia*, 866 F.3d 782, 799 n.70 (7th Cir. 2017); *Hussain*, 2017 WL 4865562, at *6-9.  This Court interpreted the fourth element to require the government to prove that "Hussain caused HP to repeat his representations about the state of Autonomy's finances," *and* that "he knew that he was causing HP to do so."  *Hussain*, 2017 WL 4865562, at *9.  Yet the government *did not offer any such proof at all*.  There is *no* evidence that Hussain *caused* HP to repeat any alleged misrepresentations, much less that he *knew* that he was causing HP to do so.  That, standing alone, requires acquittal.  *See, e.g.*, *Katakis*, 800 F.3d at 1023 ("evidence is insufficient to support a verdict where mere speculation, rather than reasonable inference, supports the government's case, or where there is a total failure of proof of a requisite element") (quotation marks omitted).  And the government also failed to prove the other elements.  As already discussed, the evidence was insufficient to prove beyond a reasonable doubt that Hussain knowingly executed or attempted to execute a scheme to defraud and made material false statements as part of that scheme with the specific intent to defraud.

### III.   CONCLUSION

The Court, therefore, should acquit Hussain of all charges under Rule 29.

Respectfully submitted,

Dated:  May 23, 2018                    KEKER, VAN NEST & PETERS LLP

By:   */s/ John W. Keker*
JOHN W. KEKER

Attorneys for Defendant
SUSHOVAN HUSSAIN

1283224