ALEX G. TSE (CABN 152348)
Acting United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
WILLIAM FRENTZEN (LABN 24421)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone:  (415) 436-7453
    Fax:  (415) 436-7234
    robert.leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 16-462 CRB |
| Plaintiff, | **UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR A NEW TRIAL PURSUANT TO RULE 33** |
| v. | |
| SUSHOVAN TAREQUE HUSSAIN, | |
| Defendant. | |

## INTRODUCTION

    The United States hereby responds to the Defendant's Motion for a New Trial under Federal Rule of Criminal Procedure 33 dated May 23, 2018 ("Defendant's Rule 33 Motion"). There were indeed "two sides to the story" in this criminal case.  Defendant's Rule 33 Motion at 1.  And, contrary to the defendant's claims, the jury heard both of them during the trial.

    At best, the defendant's motion for a new trial rests on the complaint that he was permitted to present only some -- not all -- of the post-October 3, 2011 evidence he wanted.  In multiple hearings, the Court spent a substantial amount of time considering extensive argument and briefing from both sides regarding the possible relevance of what was, ultimately, not

1   relevant: actions occurring after the fraud was complete.  The Court properly excluded other

2   evidence – like HP's complex after-the-fact purchase pricing accounting and its history of other

3   corporate acquisitions unrelated to Autonomy – because it was not only irrelevant but also

4   confusing and cumulative under Federal Rule of Evidence 403.  In the end, the defendant's

5   complaints are hardly "exceptional," the standard required to justify a new trial.  His motion for a

6   new trial should therefore be denied.

7                                    **STATEMENT OF FACTS**

8          The defendant had a fair trial.  Over two months, from February 26, 2018 to April 30,

9   2018, thirty-five (35) witnesses testified and approximately 1,381 exhibits were received in

10  evidence.  The defendant called one significant witness in the defense case, Cathy Lesjak, the HP

11  Chief Financial Officer.  He introduced approximately 494 exhibits in his defense during the

12  trial.  The factual record was well-developed.  The competing views of the evidence were well-

13  contested in closing arguments that spanned two days.

14         In his closing argument, counsel for the defendant used the vast trial record to support the

15  very contentions he now claims he was prevented from making.  For example, the defendant

16  argued at length that HP was not shocked by its post-closing discovery of significant hardware

17  sales by Autonomy.  *See, e.g.,* Trial Transcript at 5895-5896 ("[In 2012, when Chris Yelland

18  worked on the books], [t]here was no mention of fraud.  There had been no mention of any

19  problem with the hardware sales, which were just sitting on the books for anybody to see.").

20  And counsel also argued that HP's lack of "vision" -- not any fraud within Autonomy – was

21  responsible for Autonomy's failure to perform as expected once it had been acquired by HP.

22  *See, e.g.,* Trial Transcript at 5958 ("Unfortunately for [Mr. Leo Apotheker], … [the Autonomy

23  acquisition] didn't work out and he was fired.  The visionary was gone.  The vision was never

24  achieved….  [I]t took a year for HP to claim fraud.  Isn't that proof that the claim of fraud was

25  made up in hindsight?").  In these ways, the defendant's claim that "[t]he defense was not

26  allowed to tell its side of the story" is not true.

27         In the end, the government's case – and the proof showing the defendant's intent to

28  defraud – was overwhelming.  Using more than nine witnesses from within Autonomy, five

1  witnesses from the resellers with whom Autonomy did business and two of the auditors the
2  defendant defrauded – not to mention approximately 887 separate pieces of business record
3  evidence – the government proved that twenty-one separate multi-million deals – all involving
4  the defendant and his coconspirators – were fraudulent.  *See* Exhibit A (the "Balance Sheet of
5  Fraud" slide used by the government during closing argument).  By itself, this evidence showed
6  that, between January 2009 and June 2011, Autonomy paid approximately $215 million in order
7  to recognize approximately $190 million in revenue, powerful evidence of the non-economic,
8  circular and ultimately unsustainable way the defendant and his co-conspirators fabricated
9  Autonomy's claims of growth.  *Id*.  None of that evidence depended on the restatement.  All of
10 that evidence left no reasonable doubt that Autonomy's publicly-filed financial statements over a
11 ten (10) quarter period – all prepared and signed by the defendant and all fraudulently passed off
12 on HP's executives – were materially false and misleading.

13      The government used the evidence described above to *independently* prove the scheme to
14 defraud and the defendant's criminal intent.  The government used the restatement for the more
15 limited purpose of *quantifying* the full amount of the fraud.  *See* Exhibit B (the "Q1 2009 to Q2
16 2011 Reported Revenues" slide used by the government in closing argument).  And the
17 restatement was properly admitted into evidence as a business record based on the Ninth
18 Circuit's ruling in *SEC v. Jasper*, 678 F.3d 1116, 1123-24 (9th Cir. 2012).

19      It is simply wrong to say, as the defendant does, that "the government relied heavily on
20 its 'hardware' case."  Defendant's Rule 33 Motion at 4.   Lies in August 2011 to HP about
21 Autonomy's hardware sales were just the last in a years-long series of lies by the defendant and
22 his coconspirators that spanned nearly thirty (30) months from January 2009 to July 2011.
23 Indeed, approximately 103 pages of the government's 125 page closing argument was devoted to
24 the fraudulent conduct of the defendant and his co-conspirators *before* they even engaged with
25 HP.  *Compare* Trial Transcript at 5719-5822 and 5822-5844.

26      Consequently, it seems far-fetched for the defendant to speculate, as he does, that the
27 admission of still more post-October 3, 2011 evidence about HP's after-the-fact reaction to the
28 scale of Autonomy's hardware sales would raise "substantial questions of law or fact" that would

justify a new trial.  Defendant's Rule 33 Motion at 7.

**ARGUMENT**

**I.    Relevant Legal Standards**

**A.    New Trial Motions Pursuant to Rule 33**

Rule 33 of the Federal Rules of Criminal Procedure states that "the court may vacate any judgment and grant a new trial if the interests of justice so require."  Fed. R. Crim. P. 33(a). Courts may grant Rule 33 motions for new trials "only in exceptional cases in which the evidence preponderates heavily against the verdict."  *United States v. Rush*, 749 F.2d 1369, 1371 (9th Cir. 1984) (upholding district court's denial of Rule 33 motion where circumstantial evidence allowed inferential leap necessary for conviction).  In order to win a new trial, a defendant must show that the errors "render the resulting criminal trial fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citing *Chambers v. Mississippi*, 410 U.S. 284, 298, 302-03 (1973)).  The defendant's new trial motion does not, and cannot, meet this exceptionally high standard.

**B.    The Exclusion of Evidence Pursuant to Rule 403**

Repeatedly, the Court questioned whether evidence after the October 3, 2011 closing of HP's acquisition of Autonomy – by which time all the crimes charged in the superseding indictment had or had not been committed – was even relevant.  What is more, the relevance of the after-the-fact evidence about HP's alleged reaction to the scale of Autonomy's hardware sales was further called into question by the Ninth Circuit's ruling in *United States v. Lindsey*, 850 F.3d 1009 (9th Cir. 2017) which specifically forbids a defendant from blaming the victim's negligence for the defendant's scheme to defraud, precisely as the defendant was trying to do here.

Notwithstanding these well-justified questions about the relevance of the after-the-fact evidence about which the defendant now complains, the Court entertained and weighed repeated arguments by the defense about the need to admit evidence about facts occurring after the October 3, 2011 closing of the acquisition.  Although you would not know if from the defendant's new trial motion, the Court, in fact, admitted a significant amount of after-the-fact

evidence elicited by the defendant despite the dubiousness of its relevance like, for example, testimony from a HP witness about whether he was "shocked" in November 2011 about the scale of Autonomy's hardware sales (Trial Transcript at 3713-3716) and testimony and exhibits about HP's rebasing of Autonomy's historical financial performance in July 2012 (Trial Transcript at 5160-5176).

Assuming *arguendo* that this after-the-fact evidence was even relevant, the Court was fully authorized to limit even more post-October 3, 2011 evidence in the manner that it did pursuant to Rule 403 of the Federal Rules of Evidence. Rule 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, … undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

> "A district court's evidentiary rulings during trial are reviewed for abuse of discretion." ... "Evidentiary rulings will be reversed for an abuse of discretion only if such nonconstitutional error more likely than not affected the verdict." … A district court's decision to exclude or admit evidence under FRE 403 is reviewed with "considerable deference."

*United States v. Hankey*, 203 F.3d 1160, 1166-67 (9th 2000) (citing and quoting *United States v. Layton*, 767 F.2d 549, 553 (9th Cir. 1985) (affirming conviction and finding no error for the district court to exclude evidence of the fact the defense lawyer was not present when the defendant made a confession). *See also United States v. Cordoba*, 194 F.3d 1053, 1063 (9th 1999) ("'The Rule 403 weighing process – that of balancing the probative value of the proffered evidence against its potential for unfair prejudice or confusion – is primarily for the district court.' … We review the district court's decision to exclude polygraph evidence under Rule 403 with 'considerable deference.') (conviction affirmed and no error for district court to exclude polygraph evidence offered by the defendant).

The Court made a long record about juror confusion regarding HP's 2012 purchase price accounting and the undue delay segues into HP's acquisition of companies unrelated to Autonomy would cause. It more than justified the exclusion of still more after-the-fact evidence. So much so, the defendant cannot show the Court abused its discretion.

## II.     The Defendant Presented Abundant Post-October 3, 2011 Evidence

The crux of the defendant's new trial motion seems to be that "[t]he defense was not allowed to tell its side of the story because of an October 3, 2011 evidentiary cut-off imposed by the Court in the middle of the trial."  Defendant's Rule 33 Motion at 1.  In fact, the Court permitted an abundant amount of evidence about facts occurring after the HP-Autonomy acquisition formally closed on October 3, 2011.  But the Court did so when the facts *after* October 3, 2011 had a bearing on whether the crimes had or had not been committed *before* October 3, 2011.

Multiple claims made by the defendant about what he was allegedly not permitted to do are not supported by the trial record.  For example, the defendant claims that "the Court … barred the defense from asking Mr. [Manish] Sarin about a November 2011 email that … suggested he understood the nature of Autonomy's hardware revenues."  Defendant's Rule 33 Motion at 11.  In fact, the Court permitted the defendant to cross-examine Manish Sarin from HP *at length* about his reaction to the hardware sales in November 2011:

> Q.  When did you learn that Autonomy made money selling hardware to its customers?
>
> A.  Plain hardware without any software on it?
> Q.  Correct.
>
> A.  Quite late in 2011.  I would say maybe November/December time frame.
>
> Q.  You learned the scope of the revenues that Autonomy had generated from hardware sales; correct?
>
> A.  Correct.
>
> *****
>
> Q.  You told the Government that when you learned that fact in November 2011, you were shocked; right?
>
> A.  Yes.
>
> Q.  Isn't the truth that even after you had the precise hardware numbers, you weren't really surprised?  Didn't you ask Autonomy

1 for a job in the beginning of 2012?

2 A.  I had a conversation with Cathy Lesjak, who was the CFO of
3 HP, and … at her suggestion, I had a conversation with Dr. Lynch.

4 *****

5 Q.  And this is all two months after you told the Government you
6 were shocked to learn about the hardware revenues; is that right?

7 A.  So when I first became aware of the hardware revenues per the
8 [November 14, 2011] email from Kathryn Harvey, I thought she
 had her facts wrong because in all our diligence in the run-up in
9 August and thereafter, we were unaware of [the] sale of pure
 hardware.  So, sure, I was shocked when I learned from Kathryn
10 Harvey that there was hardware sales, but I assumed, per my email
 to her, she was incorrect in her facts.  And at this time when I
11 wrote in January of 2012, I was still unaware of the extent of the
 issues at Autonomy.

12 
13 Q.  You've told the Government that in November of 2011, you
 were shocked, right?  Those are your words?

14 A.  Yes.

15 Q.  And this [email about a January 2012 meeting with Michael
16 Lynch] is two months after that; correct?

17 A.  Yes.  Because I assumed Kathryn was wrong.

18 Trial Testimony of Manish Sarin at 3713-3716.  While the November 14, 2011 email was not

19 received in evidence, the defendant clearly introduced a substantial amount of testimony about

20 HP's reaction to learning about Autonomy's hardware sales and his claims to the contrary are not

21 convincing.

22  Similarly, the defendant contends that "[w]hen the defense attempted to cross-examine

23 Mr. [Christopher] Yelland, it was prevented from asking questions about … HP's 2012

24 valuations of Autonomy."  Defendant's Rule 33 Motion at 15.  Again, not true.  The defendant

25 cross-examined Mr. Yelland for *over sixteen pages* about his so-called rebasing work in July

26 2012, HP's initial effort to evaluate the accuracy of Autonomy's original financial performance.

27 Trial Transcript at 5160-5176.  The culmination of this lengthy inquiry was the fact that Mr.

28 

Yelland initially identified "only $8.4 million" in revenue that was "Not IFRS Compliant." *Id*. at 5175. These post-October 3, 2011 facts, developed at length by the defense in their cross-examination, fed a major defense argument that "it was only after Hewlett-Packard's CEO cried fraud [in November 2012 with the $8.8 billion write-down] that the Hewlett-Packard machine went into action." Trial Transcript at 5896.

Finally, the defendant also contends that "the defense was unable to elicit testimony … that Autonomy's books and records were delivered … to HP" on or around October 2011 and that those records included detailed information about all of Autonomy's hardware sales. Defendant's Rule 33 Motion at 13. Not true. In fact, the last piece of evidence introduced during the defense case was a stipulation marked as Exhibit 6990 which said, in relevant part:

> Defendant Sushovan Hussain and the United States hereby
> stipulate that Hewlett-Packard had access to Autonomy's books
> and records, as well as Deloitte's work papers, shortly after the
> acquisition closed on October 3, 2011.

Ex. 6990.

The defendant makes much about the Court's comments about whether or not to admit the restatement, for example. That hardly seems unusual. Courts regularly struggle to assess whether or not certain evidence is or is not probative of the elements of the offenses. And, that assessment is most often aided by waiting to see how to see how the trial evidence unfolds, precisely as this Court did.

In the end, it is simply not true that there was a strict October 3, 2011 evidence "cut-off." It is more accurate to say that the Court properly limited evidence *after* October 3, 2011 to facts that had a bearing on whether HP was or was not deceived by the defendant and his co-conspirators during their scheme to defraud *prior* to October 3, 2011, by which time the defendant had pocketed his $16 million pay day and either had or had not committed the crimes with which he was charged. When the after-the-fact evidence had a bearing on what happened before the acquisition closed, the trial record shows that the Court permitted a significant amount of evidence to be introduced. It might not have been everything the defendant wanted. But it was more than enough to insure a fair trial.

### III.   Other Post-October 3, 2011 Evidence Was Properly Excluded as Irrelevant

Other post-October 3, 2011 facts – like the amount of goodwill HP should record as an asset on its balance sheet when Autonomy became a business unit of HP – had no bearing on any of the elements of the wire fraud and the other offenses with which the defendant was charged. Even if it was relevant, HP's purchase price accounting in 2012 was highly complicated and thus potentially confusing for the jury and it would have required extensive extraneous witnesses. *See generally* United States' Response to Defendant's Offer of Proof dated April 3, 2018 (Document 308).  The purchase price accounting evidence was properly excluded under Rule 403.

Similarly, HP's history of other corporate acquisitions unrelated to Autonomy – like Compaq -- was also irrelevant to HP's decision whether or not to buy Autonomy based on the false and misleading financial statements the defendant gave HP .  Whether HP effectively integrated Compaq was plainly irrelevant to whether the defendant acted with an intent to defraud or used interstate wires to carry out his scheme.  The Court properly excluded such irrelevant evidence.

### IV.   The Court's Jury Instructions on Conspiracy Were Correct

Neither the law nor the facts justified charging the jury on multiple conspiracies in this one defendant case.  "A multiple conspiracies instruction is generally required where the indictment charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment."  *United States v. Anguiano*, 873 F.2d 1314, 1317-18 (9th 1989) (affirming conviction and finding no error to decline to charge on multiple conspiracies in a one defendant trial).

Factually, the superseding indictment charged that the defendant conspired with others to "deceive purchasers and sellers of Autonomy securities about the true performance of Autonomy's business, its financial condition, and its prospects for growth."  *See, e.g.,* Document 52 at ¶ 19.  Facts the defendant claims are other conspiracies are more reasonably construed as evidence of this broad over-arching conspiracy to falsely portray Autonomy as a growing

company when, in fact, it really was not.  That is precisely why the defendant concealed the scale of Autonomy's massive no margin hardware sales.  That is why whistleblowers like Brent Hogenson and critical financial analysts like Daud Khan had to be silenced.  And that is why the defendant and his co-conspirators had to lie to UK regulators like the Financial Reporting Review Panel.

Where there was no possibility of prejudicial spillover from other co-defendants and where the facts of supposed other conspiracies, in fact, fit squarely within the conspiracy as alleged in the superseding indictment, an instruction on multiple conspiracies was not warranted.

## CONCLUSION

It is true that the Court did not permit the defendant to introduce every piece of evidence that he wanted.  But that happened to the government too.  *See, e.g.,* Ex. 2749 (the government's summary charts that the Court declined to admit in evidence pursuant to Fed. R. Evid. 1006).  Even so, it is simply not true that the Court did not permit the defendant to tell his story.  He did.  And the jury rejected it.  For these reasons, the defendant's motion for a new trial should be denied.

Dated:  June 6, 2018                                    Respectfully Submitted,

                                                        ALEX G. TSE
                                                        Acting United States Attorney

                                                        /s/
                                                        _____
                                                        ROBERT S. LEACH
                                                        ADAM A. REEVES
                                                        WILLIAM FRENTZEN
                                                        Assistant United States Attorneys

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR A NEW TRIAL,
CASE NO. CR 16-462 CRB                    10